**Laura H. TOMPKINS, Appellant,**

v.

**WASHINGTON HOSPITAL CENTER, Appellee.**

No. 80–123.

District of Columbia Court of Appeals.

Argued Nov. 26, 1980.

Decided July 22, 1981.

John T. Coyne, Washington, D. C., with whom Paul D. Krause and William J. Carter, Washington, D. C., were on the briefs, for appellant.

James P. Schaller, Washington, D. C., for appellee.

Before KELLY and NEBEKER, Associate Judges, and GALLAGHER,* Associate Judge, Retired.

* Judge Gallagher was an Associate Judge of the court at the time of oral argument. His status changed to Associate Judge, Retired, on February 27, 1981.

GALLAGHER, Associate Judge, Retired:

This is an appeal from an order granting a motion for summary judgment filed by the defendant below in a negligence action. Appellant contends that there are material factual issues in dispute and that therefore summary judgment was improperly granted. She also contends that the trial court committed reversible error by granting appellee's motion for summary judgment prior to the lapse of ten days from the time the motion was served on appellant.[1]

Appellee contends that the ten-day notice requirement of Rule 56(c) is not applicable to renewals of summary judgment motions and was not triggered in the instant case, for the trial judge was acting on a simple renewal of an earlier motion for summary judgment to which appellant already had responded. Even if the ten-day rule were applicable, however, appellee contends that the lack of ten days' notice did not prejudice the appellant. Appellee asserts that the pleadings, depositions, and affidavits before the court indicate that appellant could not establish a prima facie case of negligence;[2] that no reasonable juror could find for appellant on the merits; and that therefore any error on the part of the trial judge was harmless.

Appellant disagrees with the characterization of appellee's second motion for summary judgment as a simple renewal and maintains that the requirements of Rule 56(c) are applicable. In the alternative, however, appellant argues that if the second motion for summary judgment were a simple renewal, and did not require the application of the ten-day requirement of Rule 56(c), then the entry of summary judgment in favor of appellee, which followed the first judge's denial of the motion, violated the "law of the case" doctrine.

Our review of the record convinces us that the second motion for summary judgment was not a simple renewal of the first motion and that the trial judge did not violate the "law of the case" doctrine by entertaining and granting appellee's second motion for summary judgment. The second motion, therefore, did trigger the ten-day notice requirement of Rule 56(c). We consider that summary judgment is a drastic measure that may be taken only upon strict adherence to proper procedure. The ten-day notice requirement of Rule 56(c) is essential to assure that the summary judgment process is fair, and, in this case, the trial court's failure to comply with the ten-day notice requirement cannot be deemed "harmless error." Accordingly, we reverse the trial court's decision and remand for further proceedings.

## I. FACTS AND PROCEDURAL HISTORY

Appellant Mrs. Laura Tompkins brought this wrongful death action against appellee Washington Hospital Center[3] and alleged

---

1. Rule 56(c) provides in pertinent part:
 The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law....

2. A prima facie case of medical malpractice or hospital negligence must consist of evidence which establishes the applicable standard of care, demonstrates that this standard has been violated, and develops a causal relationship between the breach of the standard of care and the alleged harm. *See Kosberg v. Wash. Hosp.*

*Center*, 129 U.S.App.D.C. 322, 324, 394 F.2d 947, 949 (1968).

3. The instant case is a direct negligence action against the hospital. Traditionally, hospitals have owed a direct duty to their patients to furnish equipment and facilities that are not defective, improper, or inadequate. *See Alden v. Providence Hosp.*, 127 U.S.App.D.C. 214, 218, 382 F.2d 163, 167 (1967). *See also Nat'l Homeopathic Hosp. v. Hord*, 92 U.S.App.D.C. 204, 204 F.2d 397 (1953) (defective maternity room equipment); *Carrasco v. Bankoff*, 220 Cal.App.2d 230, 33 Cal.Rptr. 673 (1963) (hospital did not have skin grafting equipment; negligence of hospital and chief surgeon in treating patient suffering from third degree burns question of fact for jury); *Eisele v. Malone*, 2 A.D.2d 550, 157 N.Y.S.2d 155 (1956) (private

that the hospital breached the applicable standard of care by failing to provide pressure monitoring equipment in its radiology room during the performance of a pulmonary angiogram on her husband, Dr. Tompkins. Appellant asserts that this breach of the standard of care was the proximate cause of her husband's death.

Dr. Marder, one of appellant's expert witnesses, and Dr. Oboler, the physician who performed the pulmonary angiogram, gave deposition testimony describing the medical procedure and the complications that developed during the treatment of Dr. Tompkins. To perform a pulmonary angiogram a catheter must be inserted in a vein of the arm. The catheter is then manipulated through the right atrium and ventricle of the patient's heart and into the pulmonary artery where it should remain throughout the procedure. There are several methods to determine or confirm whether the catheter is properly positioned. These methods include: (1) pressure monitoring equipment; (2) giving a test dose of contrast material; (3) visual determination by using a fluoroscope; and (4) using and developing right angle "scout" x-ray films. Contrast medium is then injected through the catheter so that suspected emboli, or blood clots, might be visualized under x-ray.

In this case, Dr. Oboler testified that the patient, Dr. Tompkins, was taken to the catheterization room on the third floor where Dr. Oboler inserted a catheter into the main pulmonary artery. Pressures were monitored during the placing of the catheter and its position was confirmed by injecting a test dose of contrast material.

Following the insertion of the catheter, the patient was placed on a liter and moved to the x-ray room in the basement of the hospital. After developing right angle

sanitarium which administers shock treatment breached its duty to maintain x-ray equipment for use in the course of such treatment). In the court below, three doctors were also defendants. Two doctors were dismissed from the case. The case against Dr. Oboler was settled and dismissed with prejudice.

"scout" x-ray films, Dr. Oboler determined that the catheter had moved. He then repositioned the catheter under visual inspection by using a fluoroscope and injected the contrast material. He did not use pressure monitoring equipment to aid him in repositioning the catheter. Such equipment was not immediately available in the radiology room. He did not confirm the position of the catheter by any other means, although he could have done so by two methods immediately available to him in the radiology department: (1) test dose of contrast material, and (2) right angle "scout" x-ray films. Dr. Oboler testified at his deposition that he had confidence in his ability to reposition the catheter by using a fluoroscope, and apparently he did not find it necessary to confirm the position of the catheter by the other methods. *See* note 11 *infra.*

Washington Hospital Center originally moved for summary judgment on June 22, 1979, based on the failure of appellant to supply information concerning experts pursuant to Super.Ct.Civ.R. 26(b)(4). The hospital submitted a memorandum in support of its motion which argued that appellant had made no showing that its experts would testify that the hospital had breached the applicable standard of care. Appellant filed a general written opposition to the motion for summary judgment and attached portions of the depositions of her two experts who indicated that if pressure monitoring equipment were not available to physicians in the radiology department, this probably would constitute a breach of the standard of care. Appellant also attached two affidavits relating to the applicable standard of care. *See* note 4 *infra.* There was some question, however, as to whether appellant's experts gave adequate foundations for their opinions.[4]

4. Dr. Marder stated that he was not familiar with the procedures generally followed in other hospitals at that time. Dr. Ashley stated that in every hospital he knew of in the District of Columbia and in the United States pressure monitoring equipment was available throughout the entire catheterization procedure, but that he did not know whether the equipment was available in the Washington Hospital Cen-

The trial judge denied the motion for summary judgment on July 23, 1979, without hearing argument on the motion. He found that the affidavits filed by appellant constituted 26(b)(4) statements although they were ten months late, but awarded the hospital one hundred dollars costs and attorney's fees because appellant's delay prompted the hospital to file the motion for summary judgment. The court, however, explicitly reserved its ruling until the time of trial on an important preliminary question—"The adequacy of the foundation for plaintiff's experts' opinions regarding the standard of care required of the Washington Hospital Center."

The trial originally was scheduled for November 19, 1979 before another judge. On that date, the hospital orally "renewed" its previous motion for summary judgment. Appellee based its "renewed motion" on two main grounds. First, the appellee argued that under *Morrison v. MacNamara*, D.C.App., 407 A.2d 555 (1979), which had just been decided on October 2, 1979, appellant had the burden of establishing the applicable national standard of care. The affidavits that had been submitted by appellant, however, were addressed to a local and not a national standard and therefore the hospital argued that appellant did not meet its burden. Secondly, the appellee argued that appellant could not establish the required element of causation because Dr. Oboler testified at his deposition that he usually does not use pressure monitoring equipment even if it is available. *See* note 11 *infra.* Counsel for appellant objected

that he had not been given the required ten days to respond to what he viewed as a new, expanded motion for summary judgment. The court took the motion under advisement and the trial date was rescheduled for November 26, 1979.

On November 26, appellee served appellant with a document entitled "Supplemental Memorandum of Points and Authorities in Support of Motion of Defendant, Washington Hospital Center." Appellee also submitted the affidavits of James M. Bacos, M.D. and Juan Obolle, Chief Cardiovascular Technician of Washington Hospital Center. These new affidavits indicated that, as a matter of hospital policy, pressure monitoring equipment and other special monitoring equipment would have been transported and made available to the attending physician in the radiology room upon request.[5]

On that afternoon, counsel for appellee presented oral argument on the second motion for summary judgment. Counsel for appellant again objected and insisted that pursuant to Rule 56(c), appellant was entitled to ten days from the time of service of the supplemental memorandum in support of appellee's motion for summary judgment to respond to the motion. On November 27, 1979, the trial judge granted appellee's motion for summary judgment.

## II. THE "LAW OF THE CASE" DOCTRINE

Before focusing on the ten-day requirement of Rule 56(c), we briefly consider the

---

ter's radiology room at that time. Appellant also attached two affidavits signed by appellant's attorney that stated when these two experts were later informed by appellant's attorney that pressure monitoring equipment was available to the radiology departments of local hospitals, but not available to the radiology department of the Washington Hospital Center, they both indicated that the Washington Hospital Center had breached the standard of care. The only other deposition testimony relevant to the hospital's breach of the standard of care is the testimony of Dr. Bowen. Dr. Bowen testified that "[i]deally one should have either a pressure monitor or a test injection prior to doing the injection [of the contrast material]" and that he was not aware of any hospital

where pressure monitoring equipment was not available for all phases of the pulmonary angiogram.

5. In the memorandum opinion of the trial judge a rather vague footnote reference is made to these affidavits. These affidavits contain material assertions and are in the record. *See Turner v. Am. Motors Gen. Corp.*, D.C.App., 392 A.2d 1005, 1006 (1978) ("In determining whether an issue of fact exists, our examination must take into account the pleadings, depositions, and admissions on file together with any affidavits."). It would be improvident for this court to attribute any significance to the trial judge's unclear footnote reference to these affidavits.

"law of the case" doctrine. We conclude that, in the specific context of this case, the trial judge did not violate this doctrine by entertaining and granting appellee's second motion for summary judgment after appellee's initial motion for summary judgment had been denied by another judge.

▮ The "law of the case" doctrine bars a trial court from reconsidering the same question of law that was presented to and decided by another court of coordinate jurisdiction

> when (1) the motion under consideration is substantially similar to the one already raised before, and considered by, the first court; (2) the first court's ruling is "sufficiently 'final';" and (3) the prior ruling is not "clearly erroneous in light of newly presented facts or a change in substantive law."

*Kritsidimas v. Sheskin*, D.C.App., 411 A.2d 370, 371–72 (1980), *quoted in P.P.P. Productions, Inc. v. W & L, Inc. and Hagans*, D.C.App., 418 A.2d 151, 152 (1980). This serves the judicial system's need to dispose of cases efficiently by discouraging "judge-shopping" and multiple attempts to prevail on a single question. *Kritsidimas v. Sheskin, supra*, at 371. *See generally* 1B Moore's Federal Practice ¶ 0.404 (2d ed. 1980).

▮ In this case, a number of factors support our conclusion that the trial judge did not violate the "law of the case" by entertaining and granting appellee's second motion for summary judgment. First, we note that the thrust of the first motion was that summary judgment was appropriate in light of appellant's failure to provide information pursuant to Super.Ct.Civ.R. 26(b)(4) concerning appellant's expert witnesses and their testimony on the applicable standard of care. The second motion on the other hand, relied heavily on appellant's inability to establish proximate cause. Secondly, along with its second motion for summary

judgment, appellee filed material affidavits pertaining to appellee's argument that appellant could not establish a breach of the applicable standard of care. Finally, appellee's second motion for summary judgment took advantage of a significant, intervening change in substantive law on an important preliminary issue. *See Morrison v. MacNamara, supra* at 560–65 (requiring that plaintiff establish a national, rather than a local standard of care). Under these circumstances, the second motion for summary judgment was not "substantially similar" to the first motion [6] and the trial judge did not violate the "law of the case." *Accord, Brownfield v. Landon*, 113 U.S.App.D.C. 248, 252, 307 F.2d 389, 393, *cert. denied*, 371 U.S. 924, 83 S.Ct. 291, 9 L.Ed.2d 232 (1962) (summary judgment appropriately was granted and trial judge did not violate law of the case where the second motion contained a great deal more than was contained in the first motion). *Cf. P.P.P. Productions, Inc. v. W & L, Inc. and Hagans, supra* at 152 & n.3 (denial of motion to dismiss precludes later grant of summary judgment where second judge had before him identical documents and there was no intervening change in substantive law that would make the prior ruling "clearly erroneous").

### III. TEN–DAY NOTICE REQUIREMENT OF RULE 56(c)

We begin our discussion of the ten-day notice requirement by noting that summary judgment is only appropriate when no genuine issue of material fact exists. Super.Ct. Civ.R. 56(c). *See, e. g., Sullivan v. Heritage Foundation*, D.C.App., 399 A.2d 856, 859 (1979); *Bennett v. Kiggins*, D.C.App., 377 A.2d 57, 59 (1977), *cert. denied*, 434 U.S. 1034, 98 S.Ct. 768, 54 L.Ed.2d 782 (1978). In reviewing the trial court's summary judgment ruling on the facts, we must be

---

**6.** Moreover, we note that, because the trial judge who denied the first motion for summary judgment *explicitly reserved until the time of trial his ruling on an important preliminary question*—"the adequacy of the foundation for plaintiff's experts' opinions regarding the stan-

dard of care required of the Washington Hospital Center"—there is some question as to whether his ruling was sufficiently final to bar a subsequent motion for summary judgment. *See Kritsidimas v. Sheskin, supra* at 372.

assured not only that no issue of material fact existed but also that the prevailing party was legally entitled to the judgment. *Turner v. American Motors General Corp.,* D.C.App., 392 A.2d 1005, 1006 (1978). A moving party has the burden of proving there is no issue of material fact, and all inferences which may be drawn from subsidiary facts are to be resolved against the movant. *Willis v. Cheek,* D.C.App., 387 A.2d 716, 719 (1978). Moreover, this court recognizes that issues of negligence frequently are not susceptible of summary adjudication, but involve factual questions which should be resolved by trial in the ordinary manner. *See, e. g., Franklin Investment Co. v. Huffman,* D.C.App., 393 A.2d 119, 122–23 (1978) (summary judgment held inappropriate; question of fact for the jury as to what duty of care required under the circumstances). *See generally* 6 Moore's Federal Practice ¶ 56.17[42], at 59–946 (2d ed. 1980).[7]

■ We turn now to appellant's contention that the trial court erred in granting summary judgment prior to the lapse of ten days from the time the motion was served[8] as required by Super.Ct.Civ.R. 56(c). That rule explicitly provides that a motion for summary judgment[9] "shall be served at least 10 days before the time fixed for the hearing." This ten-day notice provision is not an unimportant technicality, but safeguards the substantial interests of litigants. An opposition to a summary judgment motion often requires extensive preparation of both legal and factual arguments as well as affidavits, and the results of failing to win on an opposition to a motion for summary judgment are drastic. This ten-day notice provision is needed to assure that the summary judgment process is fair. *See Hanson v. Polk County Land, Inc.,* 608 F.2d 129, 131 (5th Cir. 1979). *See generally* C. Wright & A. Miller, Federal Practice and Procedure § 2719, at 451 (1973). Therefore, the ten-day notice provision is mandatory, not discretionary, and trial judges are obliged to enforce the provision strictly unless it is waived. *See Hanson v. Polk County Land, Inc., supra* at 131. *See generally* 6 Moore's *supra* ¶ 56.14[1], at 56–357.

7. We also note that, despite the heavy burden placed on the party moving for summary judgment in negligence or other actions generally presenting factual questions, it is clear that there may be no genuine material factual issue even though there is a formal issue. Neither a purely formal denial, nor general allegations necessarily defeat a summary judgment motion. *See Dewey v. Clark,* 86 U.S.App.D.C. 137, 143, 180 F.2d 766, 772 (1950). There may be situations where the movant for summary judgment can establish by affidavits that there is no genuine issue of material fact to be tried. In such cases, Super.Ct.Civ.R. 56(e) applies:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Thus, where on the basis of the materials presented by the movant's affidavits the movant would be entitled to a directed verdict and the opposing party fails either to offer counter-affidavits or other materials that raise a credible issue or to show that he had evidence not yet available, summary judgment may be rendered for the moving party. *See, e. g., Orvis v.*

*Brickman,* 90 U.S.App.D.C. 266, 270, 196 F.2d 762, 765–66 (1952) (summary judgment for defendant hospital properly granted in false imprisonment action; defendant supported its motion for summary judgment with affidavits, and plaintiff simply argued that she had a right to cross-examine the doctors even though she could make no assertion of fact to contradict them and filed no counter-affidavits). *See generally* 6 Moore's *supra* ¶ 56.11[3], at 56–233. *See also Reichman v. Franklin Simon Corp.,* D.C.App., 392 A.2d 9 (1978) (once moving party establishes no material issue of fact exists, burden shifts to non-moving party to demonstrate the existence of an issue of material fact; non-moving party cannot simply assert that summary judgment is inappropriate, while admitting that they "have no expectancy or hope" of producing additional evidence).

8. In this case the second motion was actually made orally on November 19 and again on November 26. It was a copy of the "supplemental memorandum" in support of the second motion that was served on appellant on November 26.

9. Superior Ct.Civ.R. 12–I(e) requires that each motion be accompanied by specific points and authorities to support the motion.

 In this case, the trial judge construed the second motion for summary judgment as simply a renewal of the earlier motion and apparently did not view a renewal as falling within the ten-day notice requirement of Rule 56(c). As a matter of common sense, of course, there may be times when a purely formal renewal of a motion for summary judgment does not require adherence to the ten-day notice provision.[10] In this case, however, there were significant differences between the first and second motions for summary judgment. These differences support our conclusion that the trial judge did not violate the "law of the case" by granting appellee's second motion for summary judgment. *See* Part II *supra*. The same differences preclude the characterization of the second motion as a "simple renewal" that is not subject to the ten-day notice requirement of Rule 56(c). We conclude, therefore, that the trial judge erred by failing to allow appellant ten days from the time the "supplemental memorandum" was served to respond to appellee's second expanded motion for summary judgment.

Having determined that the trial judge erred by failing to comply with the ten-day notice requirement of Rule 56(c), we consider whether the application of a "harmless error" rule is appropriate under these circumstances. We note that some courts employ a kind of "harmless error" analysis to mitigate the harshness of an inflexible rule requiring reversal in any case where the procedural requirements of Rule 56(c) have not been strictly followed. In *Oppenheimer v. Morton Hotel Corp.*, 324 F.2d 766 (6th Cir. 1963), at a hearing on a motion for summary judgment the trial judge asked plaintiff's counsel if he had any further evidence to submit and he replied in the negative. The trial judge then decided on the same day that as a matter of law, considering the pleadings, depositions, admissions and affidavits in the record, the defendant-appellee was entitled to summary judgment. In affirming the judgment of the lower court, the Sixth Circuit ob-

served that, under such circumstances, it would be "a useless procedure" to reverse the lower court because it did not allow ten days to elapse from the time the motion was filed until it was heard. *Id.* at 768. *See also Hoopes v. Equifax, Inc.*, 611 F.2d 134, 136 (6th Cir. 1979) (before granting an oral motion, judge afforded appellant ample opportunity to show that genuine issues of material fact existed; appellant did not demonstrate that he could have produced any additional evidence if ten days' notice had been given); *Ikerd v. Lapworth*, 435 F.2d 197, 203 (7th Cir. 1970) (affirming trial court's grant of defendant's motion for summary judgment nine days after it was served on plaintiff where plaintiff neither called court's attention to the fact that Rule 56(c) afforded him an additional day to respond to the motion nor specified what additional material he would have introduced in opposition to the motion had he been granted the full ten-day period). In order to determine whether a "harmless error" analysis is appropriate, however, we must consider the purpose of the ten-day notice requirement as well as the specific facts in this case.

 As a number of courts have recognized, the purpose of the advance notice provision in Rule 56(c) is to permit the non-moving party a reasonable and meaningful opportunity to challenge the motion. *See, e. g., Winfrey v. Brewer*, 570 F.2d 761, 764 (8th Cir. 1978); *Ailshire v. Darnell*, 508 F.2d 526, 528 (8th Cir. 1974) (court must afford party opposing motion time to serve counter-affidavits); *Macklin v. Butler*, 553 F.2d 525, 528 (7th Cir. 1977) (reversal of grant of summary judgment where trial judge ruled without the benefit of appellant's submissions which appellant represented would have set forth specific, controverted, and material facts). When an opportunity to prepare a written opposition to a motion for summary judgment follows, rather than precedes the grant of the motion, however, it cannot fairly be regarded

---

**10.** In such cases, however, the "law of the case" doctrine may preclude a trial judge from

entertaining or granting a second motion for summary judgment. *See* Part II *supra*.

as either reasonable or meaningful. *See Winbourne v. Eastern Air Lines,* 632 F.2d 219, 224 (2d Cir. 1980). Under such circumstances, an appellate court engaging in a harmless error analysis would be forced to look at the depositions, the affidavits, and memoranda filed by the moving party and frequently to speculate as to what the non-moving party could have introduced or argued in response had the court complied with the ten-day notice requirement of Rule 56(c). Based on this one-sided record, assertions and arguments in the briefs of the parties, and the appellate court's speculation as to what the non-moving party could have adduced, the appellate court would be placed in the undesirable position of determining whether failure to comply with the ten-day notice provision of Rule 56(c) constitutes "harmless error"—that is, whether summary judgment was properly granted despite the trial judge's failure to provide the non-moving party with a meaningful opportunity to demonstrate that summary judgment was inappropriate. Thus, although a "harmless error" analysis may be appropriate in some cases, such an analysis should be sparingly and carefully utilized. At a minimum, where the party against whom summary judgment is to be entered draws the ten-day notice requirement to the trial judge's attention and refuses to waive the requirement, that party should be given an adequate opportunity to oppose the motion, absent an express representation that there is no additional evidence to be submitted or research to be done. A more flexible "harmless error" rule would drastically undercut the purpose of the ten-day notice requirement of Rule 56(c).

In this case, appellant called the ten-day notice requirement of Rule 56(c) to the trial judge's attention and did not waive the rule, but vigorously asserted her right to ten-days' notice. Appellant did not expressly represent that she could adduce no further evidence or that additional research would not be helpful in opposing the motion. Moreover, an examination of the pleadings, depositions, and affidavits in this case does not demonstrate that there are not material facts in dispute and that appellant could not have established a prima facie case of negligence, *i. e.,* that the hospital breached the applicable standard of care and that this breach was the proximate cause of Dr. Tompkins' death. The deposition testimony of the expert witnesses is ambiguous on the issues of the standard of care and breach of the applicable standard of care. Although these witnesses indicated that pressure monitoring equipment should be "available" to physicians while in the radiology room, they did not actually define the term "available." Along with its second motion for summary judgment, appellee filed two affidavits, signed by cardiologists at the Washington Hospital Center, indicating that pressure monitoring equipment would have been made available in the radiology suite if requested by the attending physician. It is not at all clear that had the appellant's expert witnesses been informed that such equipment would have been transported to the radiology room upon request, they would have testified that this constituted a breach of the applicable standard of care. Appellant, however, had no opportunity to file counter-affidavits addressing this issue, for a hearing was held on the same day that the "supplemental memorandum" and affidavits were served and a decision was rendered on the following day. Similarly, appellant has no meaningful opportunity to consider and address the proximate cause issue presented in appellee's second motion.[11]

We conclude, then, that Rule 56(c) mandates strict compliance with the ten-day

---

11. In granting appellee's motion for summary judgment, the trial judge seemed to rely exclusively on the fact appellant could not possibly establish the causation element of a prima facie case of negligence, because Dr. Oboler stated in his deposition that he does not use pressure monitoring to determine catheter location. The trial judge quoted what he viewed as a crucial portion of Dr. Oboler's deposition:

Once the pressures have been obtained and the catheter position has been visually found, it is most unusual to have this kind of problem. It is very unusual for the catheter to move. When it does move, it is very simple just to advance in the same way we did. Even at this point in time we don't keep the patient on pressure when we are doing this, because we have to disconnect and connect

notice requirement. In this case, appellee's second motion for summary judgment triggered the ten-day notice requirement. Appellant did not waive Rule 56(c) and did not represent that she could adduce no further evidence. Nevertheless, the trial judge granted appellees' motion for summary judgment prior to the lapse of ten days and deprived appellant of the opportunity of filing additional materials to oppose the motion. Under these circumstances, we are unable to say that failure to comply with the ten-day notice requirement of Rule 56(c) constitutes "harmless error." We cannot say that there are no material facts in dispute and that appellee is entitled to summary judgment as a matter of law. We therefore reverse the judgment of the trial court and remand for further proceedings.

*Reversed and remanded.*

up the Hobbs-Viamonte injector. It would be disconnecting from the injector, hooking back up to the pressure, and disconnecting from the pressure and rehooking up to the Hobbs. When you rehook to the injector, you have to be careful not to get air back. You have to have a procedure to suck back. It is like a big deal hooking up to the injector. You have to have an airtight system. Even now when we are in the cath lab after we get our pressures and position our catheter, that is it for pressure. We don't pressure monitoring again.

We note that, although appellant addressed the question of proximate cause very generally in her written opposition to the first motion for summary judgment, appellant had no opportunity to consider and carefully prepare a written argument demonstrating that Dr. Oboler's deposition testimony should not foreclose imposition of liability on the hospital.