**Charles B. KURTH, Appellant,**

v.

**John F. DOBRICKY, Jr., Appellee.**

**No. 83–1046.**

District of Columbia Court of Appeals.

Submitted Oct. 31, 1984.

Decided Jan. 18, 1985.

---

Charles B. Kurth, pro se.

Robert D. Goodrich, Washington, D.C., for appellee.

Before FERREN and BELSON, Associate Judges, and PAIR, Associate Judge, Retired.

FERREN, Associate Judge:

■ This is an appeal from an order granting a renewed motion for summary judgment in an action for unpaid rent, after another judge had denied such a motion. We conclude that the trial court erred in granting the renewed motion because the two motions were virtually identical, the amplified record in support of the second motion contained no meaningful new information, and there had been no intervening change in substantive law. Accordingly, we reverse and remand for trial.

I.

Charles Kurth, the defendant-appellant, contracted with Weaver Bros. in the summer of 1981 to purchase an office condominium on MacArthur Boulevard. According to Kurth, Weaver Bros.' agent, Steve Swaney, initially promised that the condominium would be ready for occupancy by September 15. On August 14, however, Swaney informed Kurth that the office would not be ready on time but that he could temporarily use office space at 2233 Wisconsin Avenue. Swaney assured Kurth that this space was available because Weaver Bros. had a "special relationship" with the owner, Norbrick Realty Co. (of which John Dobricky, the plaintiff-appellee, is a general partner). Kurth accordingly moved into the Wisconsin Avenue property.

The MacArthur Boulevard premises were still not ready by the end of September, however, so Kurth remained on Wisconsin Avenue until his new premises were completed in January 1982.

In September 1982, Dobricky served a complaint alleging that Kurth had failed to pay rent due and owing for the period between October 1, 1981 and January 1, 1982. Kurth answered that, although he had discussed matters such as phone installation and parking availability with Swaney on August 14, there had been no discussion at that time about rent for the temporary space. Shortly thereafter, however, Swaney had advised him that Norbrick Realty Co. had requested a lease and required "one month's estimated utilities" as "token rent." Swaney also allegedly stated that Kurth would pay no other charges, except a charge for minor wiring. Kurth signed the requested lease [1] and paid one month's

---

1. The parties signed a standard preprinted office building lease. However, they altered the language that defines the lease term by substituting the word "month" for "year" as follows:

   TERM 2.01—the Term of the lease shall commence on the 1st day of September, 1981 and shall terminate at 12:00 o'clock, midnight, on the last day of the calendar month which completes *one full month* of tenancy hereunder. (Emphasis added.)

In the trial court proceedings, appellant relied on the above-quoted provision as evidence that the parties intended that he pay only the one month's rent previously agreed upon. However, other provisions of the lease provide:

   RENT 3.01—Tenant hereby convenants and agrees to pay initially a basic *monthly* rent of Three Hundred Fifty-four and 25/100 Dollars ($354.25), payable ... in equal *monthly installments*.... (Emphasis added.)
   ....

rent for September 1981. Kurth further answered that, during the period between September 1981 and January 1982, he had frequent discussions with Weaver Bros.' representatives but received no demand for additional rental payments until September 1982—eight months after he had left Wisconsin Avenue—when he was served with the summons in this action.

On November 19, 1982, Dobricky filed a motion for summary judgment, claiming that the allegations in Kurth's answer did not constitute a sufficient defense at law and that "[t]here is no dispute as to the amount of money due and owing under the lease." [2] The accompanying memorandum of points and authorities invoked the parol evidence rule as a bar to consideration of alleged oral agreements made before execution of the lease and noted that the lease contained an integration clause. Dobricky also disputed any suggestion that either an alleged oral agreement or the terms of the lease itself (*supra* note 2) might give rise to ambiguity requiring judicial construction. Kurth opposed this motion, claiming that he had been obliged to pay only one month's rent and that he had, in fact, paid it.

After argument, Judge Morrison denied summary judgment, concluding that the lease was ambiguous. He noted that the parties had typed in a provision setting the lease term at "one month" but that the remainder of the lease contained references to "monthly" rent and parking. Judge Morrison concluded that the record raised sufficient doubt as to "whether or not there is a genuine factual dispute ... that

summary judgment is inappropriate," citing *Holladay Corp. v. Turkin,* 443 A.2d 1328 (D.C.1982); *Scrimgeour v. Magazine,* 429 A.2d 187, 188 (D.C.1981); and *Glekas v. Boss & Phelps, Inc.,* 437 A.2d 584, 587 (D.C.1981) ("[W]hen there is '[a] question of interpretation of an integrated agreement [summary judgment should be denied if interpretation] ... depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence.'") (citations omitted).

Subsequently, Dobricky's counsel deposed Kurth, eliciting admissions that Kurth had signed the lease after "scanning" the provisions that "related to the agreement between myself and Mr. Swaney...." (*e.g.,* provision 2.01, *supra* note 1). Kurth repeated his earlier assertion that he had, based on Swaney's representation, understood that he was signing only a "one-month lease" and that after the month he could stay for free. The rest of the deposition consisted primarily of Kurth's reading aloud certain other provisions of the lease at the request of Dobricky's counsel and acknowledging that he was familiar with commercial leases.

Dobricky then submitted a renewed motion for summary judgment, which was identical to the first motion except that the supporting memorandum of points and authorities summarized portions of the intervening deposition. Kurth failed to oppose this motion, which Judge McArdle granted by simply noting that "no opposition ... [was] filed."

TENANT HOLDING OVER 20.01—If Tenant shall not immediately surrender possession of the premises at the termination of this lease, Tenant shall become a tenant from month to month....
The lease also contains an integration clause.

**2.** Appellee Dobricky's Statement of Material Facts As to Which No Genuine Issue Exists claimed that:
    1. On or about August, 1981, Defendant and Plaintiff entered into a lease agreement for the premises known as 1265 square feet situated on the second floor of the George-

town Building, 2233 Wisconsin Avenue, N.W., Washington, D.C., said lease commencing September 1, 1981, for a period of one (1) month. Defendant entered into possession of said premises pursuant to said lease.
    2. On or about January 1, 1982, Defendant vacated said premises.
    3. Defendant owes Plaintiff rent in the amount of One Thousand Sixty-Two Dollars Seventy-Five Cents ($1,062.75) for the period of October 1, 1981 through January 1, 1982....

## II.

Kurth essentially argues that Judge McArdle erred in granting the renewed motion for summary judgment, despite Kurth's failure to oppose it, because Judge Morrison earlier had ruled that the lease was ambiguous and because the subsequent deposition added nothing to clarify the situation. Kurth therefore seeks an opportunity to present evidence, at trial, of the oral agreement he allegedly entered into with Weaver Bros.' agent, Steve Swaney (then representing Dobricky), limiting rent to one month regardless of how long Kurth had to remain on Wisconsin Avenue.

Dobricky responds that the court properly granted his renewed motion and suggests that, in light of Kurth's deposition testimony, no genuine issues of material fact remain. Dobricky also cites Super.Ct. Civ.R. 12–I(e) for the proposition that the court may treat an unopposed motion for summary judgment "as conceded." [3]

■ A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits … show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Super.Ct.Civ.R. 56(c); *Nader v. de Toledano*, 408 A.2d 31 (D.C.1979), *cert. denied*, 444 U.S. 1078, 100 S.Ct. 1028, 62 L.Ed.2d 761 (1980). However, "the party moving for summary judgment has the burden to show that he is entitled to judgment under established principles; and if he does not discharge that burden then he is not entitled to judgment. *No defense to an insufficient showing is required.*" 6 Pt. 2 J. Moore & J. Wicker, Moore's Federal Practice ¶ 56.22[2] (2d ed. 1982) (emphasis added). *See* Fed.R.Civ.P. 56(e) advisory

committee note ("Where the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented.")

■ In *Milton Properties, Inc. v. Newby*, 456 A.2d 349 (D.C.1983), this court reversed the grant of an unopposed motion for summary judgment because the trial judge had declined to review the matter on its merits. We ruled that the trial court was not free to treat the motion as automatically conceded, given the requirement of Rule 56(c) that the court itself must examine the record to confirm that there is no genuine issue of material fact and that the movant, on the basis of the undisputed material facts, is entitled to judgment as a matter of law. *Id.* at 354. Thus, "[e]ven if an unopposed motion for summary judgment is deemed to establish that no genuine issue of material fact exists,[4] the court must still review the pleadings and other papers to determine whether the moving party is legally entitled to judgment." *Id.* (citations omitted).

■ Because Judge McArdle granted the renewed motion for summary judgment simply because "no opposition … [was] filed," he accordingly erred. *Id.* The question then becomes whether Judge McArdle should have granted summary judgment had he examined the record.

■ We begin by noting that a moving party who submits a renewed motion for summary judgment is not entitled to judgment

when (1) the motion under consideration is substantially similar to the one already raised before, and considered by, the first court; (2) the first court's ruling is

---

3. Super.Ct.Civ.R. 12–I(e) reads in part:

A statement of opposing points and authorities shall be filed and served within 10 days or such further time as the Court may grant. If a statement of opposing points and authorities is not filed within the prescribed time, the Court may treat the motion as conceded.

4. "It has always been perilous for the opposing party neither to proffer any countering evidentiary materials nor file a 56(f) affidavit." 6 Pt. 2 Moore's Federal Practice ¶ 56.22[2]; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 161, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142 (1970) (quoting Moore, *supra*).

"sufficiently 'final'"; and (3) the prior ruling is not "clearly erroneous in light of newly presented facts or a change in substantive law."

*Tompkins v. Washington Hospital Center,* 433 A.2d 1093, 1098 (D.C.1981) (citations omitted). This principle operates to prevent "judge shopping" by parties dissatisfied with another judge's ruling. *Ehrenhaft v. Price, Inc.,* 483 A.2d 1192, 1196 (D.C.1984); *Brownfield v. Landon,* 113 U.S.App.D.C. 248, 252, 307 F.2d 389, 393, *cert. denied,* 371 U.S. 924, 83 S.Ct. 291, 9 L.Ed.2d 232 (1962). Thus, a renewed motion for summary judgment may only be granted, for example, when the renewed motion relies on a different theory of law, *Tompkins,* 433 A.2d at 1098; when there is a "significant, intervening change in substantive law," *id.;* or when depositions taken subsequent to the first motion materially expand the record so that "[t]he motion on which summary judgment [is] granted [is] not 'an identical motion.'" *Brownfield,* 113 U.S.App.D.C. at 252, 307 F.2d at 393.

We perceive no such circumstances here. The renewed motion was virtually identical to the earlier motion denied by Judge Morrison. Dobricky's deposition of Kurth added no new, material information that would permit another court of coordinate jurisdiction to reconsider the motion. There was no intervening change of substantive law.

Thus, the final question is whether Judge Morrison ruled correctly—a question on which, for the sake of judicial economy, we make an independent review of the record. *See Patrick v. Hardisty,* 483 A.2d 692, 697 (D.C.1984); *Scrimgeour,* 429 A.2d at 188 (citing *Dewey v. Clark,* 86 U.S.App.D.C. 137, 180 F.2d 766 (1950)).

■ The question whether a lease is ambiguous is one of law, not fact. *Holland v. Hannan,* 456 A.2d 807, 815 (D.C. 1983). We agree with Judge Morrison that the written lease here is ambiguous as a matter of law. Thus, absent conclusive, clarifying testimony or other evidence derived from discovery after denial of the first summary judgment motion, the parties' true intent can be determined only through the introduction of parol evidence at a trial.

Accordingly, we reverse and remand for trial, in order to permit exploration of extrinsic circumstances "concerning the parties' negotiations prior to and contemporaneous with the formation of the agreement." *International Brotherhood of Painters and Allied Trades v. Hartford Accident and Indemnity Co.,* 388 A.2d 36, 43 (D.C.1978) (citing *1901 Wyoming Avenue Cooperative Association v. Lee,* 345 A.2d 456, 461–63 (D.C.1975)).

*Reversed and remanded.*