**John T. PATRICK, Appellant,**

v.

**Walter HARDISTY, Appellee.**

**No. 83–1146.**

District of Columbia Court of Appeals.

Argued Oct. 2, 1984.

Decided Nov. 8, 1984.

Henry Lincoln Johnson, Jr., Washington, D.C., for appellant.

Philip M. Musolino, Washington, D.C., for appellee.

Before PRYOR, Chief Judge, NEBEKER, Associate Judge, and PAIR, Associate Judge, Retired.

PRYOR, Chief Judge:

In this case involving a complaint for possession of property, appellant John T. Patrick (Patrick) asserts that the grant of summary judgment in favor of appellee Walter Hardisty (Hardisty) was error because of genuine issues of material fact in dispute between the parties. In addition, appellant contends that the motion which formed the basis for the court's ruling was untimely, *see* Super.Ct.Civ.R. 12–1(n), and likewise was precluded by the denial of an earlier motion, which it is urged, constituted the "law of the case."[1] Appellee contends that even if all facts are taken in the light most favorable to appellant, he still is entitled to judgment as a matter of law. Because we find that issues of material fact that could determine the rights of the parties remain in dispute, we reverse and remand.

The factual and procedural background of this case is complex. For this reason, and because resolution of this case requires determination of whether there are outstanding issues of material fact in dispute, we set forth the details of the real estate transaction and procedural steps in the trial court underlying this appeal.

**I**

On December 1, 1964, Marvin Patrick, appellant's deceased brother, and Walter

---

1. Because of our conclusion that material issues of fact remain in dispute, we need not reach these claims.

Hardisty, entered into a contract for the sale of improved real estate located at 1250 Eighth Street, N.W., Washington, D.C., which was owned by Hardisty. The contract called for a purchase price of $10,500, with $500 paid on execution of the contract. An additional $500 was payable in "cash at the date of conveyance" and the remaining $9,500 was secured by a deferred purchase money note at 6% interest held by the seller. The terms of the note, dated January 1, 1965, called for payment by purchaser of $90 per month, with the balance due in full on January 1, 1968.[2] The December 1 agreement also provided, "This contract is void except that a clear deed will be available to the purchaser within twelve months, or that all money will be refunded." In addition, the contract provided that all terms of the agreement were to be binding on the "heirs, executors, administrators or assigns" of the parties.

Marvin Patrick did not obtain a clear deed to the property within twelve months of December 1, 1964.[3] He did make regular payments of $90 per month on the note during the years 1965 through 1968. However, no final payment of the balance due was made on or before January 1, 1968, as required under the terms of the sales contract and note. Nevertheless, Marvin Patrick remained in possession and continued to tender payments of roughly $90 per month until July 1, 1968. Hardisty accepted these payments and credited them against the balance due on the note. On September 2, 1968, Marvin Patrick died, having made approximately twenty-eight separate payments in varying amounts totalling $3,790. According to the owner's records, this left a balance due on the note of $8,299.

At this point, Marvin Patrick's brother, appellant John Patrick, entered the transaction. The record does not indicate a precise legal relationship between John Patrick and Walter Hardisty, but it is undisputed that John Patrick assumed possession of the property soon after his brother's death. On May 1, 1971, Patrick and Hardisty orally agreed that Patrick would tender an initial $180, followed by payments of $180 per month pursuant to a new sales contract and note in the amount of $10,399.50.[4] A final payment of the balance remaining on the note would be due in five years.[5] On May 31, 1971, Hardisty sent Patrick copies of the sales contract and note for execution and return.[6]

Patrick's record of payments under the note was sporadic. On July 8, 1971, August 24, 1971, May 21, 1972, March 3, 1973, and September 28, 1973, Hardisty wrote Patrick concerning late or missed payments, or checks returned for insufficient funds. According to the ledger sheet maintained by Hardisty, the last payment made by Patrick was on June 17, 1974, in the amount of $180.[7]

The precise course the relationship between Patrick and Hardisty took at this point is hotly disputed. Patrick claims that at a time prior to initiation of the present possessory action, he and Hardisty entered

2. The note also required seller to pay taxes and fire insurance, the amount of such payments to be added to the balance due on the note.

3. The record does not indicate whether the deed was in fact "made available" to purchaser. It is clear, however, that title to the property remained with Walter Hardisty.

4. The terms of this agreement are outlined in a letter from Hardisty to Patrick dated May 1, 1974.

5. Apparently, this note was an extension of the obligation originally entered into by Marvin Patrick. This is indicated by the fact that the amount of the note, $10,399.50, was the amount calculated by Hardisty to be due at that time under the earlier note. The terms of this agreement were memorialized in a letter from Hardisty to Patrick on April 8, 1971.

6. Neither party has produced copies of the contract and note. However, the possibility that they were indeed executed is raised in a letter from Hardisty to Patrick on May 21, 1972, stating, "our contract specifies . . . ."

7. The ledger sheet maintained by Hardisty shows total payments under the note of roughly $900.

into an oral agreement that supplanted their arrangement under the contract and note. The agreement between Patrick and Hardisty, Patrick claims, contemplated eventual purchase of the property by the Redevelopment Land Agency (RLA). Patrick alleges that under this agreement, payments on the note were suspended and he was required instead, "to make certain repairs and to keep the house in habitable condition." In return for these actions, Hardisty purportedly agreed that "no action would be taken until such time as the RLA would move to condemn the property," and that Patrick would receive the balance of all monies paid on condemnation in excess of "the balance owing on the note signed by M. Patrick." Hardisty strongly denies that any such agreement ever occurred. Nevertheless, Patrick was allowed to remain in possession following June 17, 1974, without tendering any payments under the note or otherwise.[8]

The property was never condemned by the RLA. Hardisty made no attempt to oust Patrick until July 20, 1979, when he instituted the present action to recover possession.

Hardisty commenced the present action on July 20, 1979, by filing a complaint for possession in the Landlord and Tenant Branch of Superior Court. In his Complaint for Possession, appellee characterized appellant as a "tenant at sufferance/trespasser," and offered the following grounds for seeking possession:

Failure to quit after expiration of notice to quit and vacate .... Defendant, or Defendant's successor have never paid any rent to the plaintiff, but continue to reside in the property. Plaintiff wishes possession.[9]

On September 6, 1979, Hardisty moved for summary judgment.

Patrick filed an opposition to the motion for summary judgment on the complaint for possession on September 11, 1979. Appellant based his opposition to the summary judgment motion on his right to continued possession under the oral agreement with Hardisty:

1. That pursuant to an agreement with the noteholder, he has spent in excess of five thousand ($5,000.00) dollars in making improvements to the property in 1974 and since.

2. That it was understood and agreed that no action would be taken until such time as R.L.A. would move to condemn the property.

Despite the fact that Patrick was asserting a right to continued possession of the property as a defense to the summary judgment motion on the possessory action, the trial court determined that these allegations constituted a "Plea of Title" under Super.Ct. L & T R. 5(c). Consequently, on March 4, 1980, the judge denied the summary judgment motion, gave Patrick until March 17, 1980 to file a Plea of Title under Super.Ct. L & T R. 5(c), and certified the case to the Civil Division for trial on an expedited basis.[10]

Although captioned as an "Answer and Plea of Title," appellant's pleading, filed on March 13, 1980, contained allegations supporting both a right to possession and a right to title. In the Plea of Title, appellant asserted rights to the property under both assumption of his brother's obligations under the January 1, 1965 note, and performance of the subsequent oral agreement to make repairs on the property in

8. Hardisty has not provided evidence indicating that he objected to Patrick's discontinuation of payments on the note between June 17, 1974 (the date of the last payment), and July 20, 1979 (the date of commencement of this action). This apparent failure to object is in sharp contrast to Hardisty's behavior during the period July 1, 1971 through September 1973, when he wrote five times complaining vigorously about late or missed payments.

9. The space on the form complaint for listing the amount of rent in arrears was left blank.

10. Pursuant to Super.Ct. L & T R. 5(c), appellant was also required to post an undertaking. This was set at the $675 already paid into court under a protective order, plus $84 per month for as long as the matter was still pending.

exchange for continued possession and a split of the proceeds when the property was sold to the RLA.[11] Appellant defended his right to possession noting that his "right to the property was never challenged until the present action." In his prayer for relief, Patrick requested that "Hardisty be compelled to convey the property in accordance with his contract," and that the court declare "the heirs of Marvin A. Patrick the equitable owners of the subject property."

Because Patrick's response to Hardisty's initial complaint for possession was characterized as a plea of title, and his next pleading was captioned "Plea of Title," all subsequent argument and consideration in the case concerned the claim of title and not the right to possession. On February 23, 1982, appellee again moved for summary judgment contending that Patrick had no claim to title under an assumption of his brother's agreement, and that any oral agreement, assumed to exist *arguendo*, was "invalid, void, null and unenforceable as a matter of law." This motion was granted.

## II

Summary judgment may be granted in an action "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no issue of material fact and that the moving party is entitled to a judgment as a matter of law. Super.Ct.Civ.R. 56(c); *Burch v. Amsterdam Corp.,* 366 A.2d 1079, 1083–84 (D.C. 1976). The party moving for summary judgment bears the burden of demonstrating the absence of any factual issue. *Nader v. de Toledano,* 408 A.2d 31, 42 (D.C. 1979), *cert. denied,* 444 U.S. 1078, 100 S.Ct.

1028, 62 L.Ed.2d 761 (1980); *Burch v. Amsterdam Corp., supra,* 366 A.2d at 1084.

To survive a motion for summary judgment, "the opposing party need only show that there is sufficient evidence supporting the claimed factual dispute to require a jury or judge to resolve the parties' differing versions of truth at trial." *International Underwriters, Inc. v. Boyle,* 365 A.2d 779, 782 (D.C.1976). Thus, the court's role is not to resolve any fact issues, but rather "merely to see if 'the record ... demonstrate[s] that there is no issue of fact from which a jury could find' for the non-moving party." *Nader v. de Toledano, supra,* 408 A.2d at 42 (citations omitted).

Because the moving party carries the burden of proving the existence of no genuine issue of fact in dispute, "the material lodged in support of the motion must be viewed in the light most favorable to the opposing party." *International Underwriters, Inc. v. Boyle, supra,* 365 A.2d at 782. Where there is the slightest doubt as to the facts, summary judgment is not in order. *Aderholdt v. Lewis,* 187 A.2d 488, 490 (D.C.1963).

On review of the granting of a motion for summary judgment, the appellate court makes an independent review of the record. *Phenix-Georgetown, Inc. v. Chas. H. Tompkins Co.,* 477 A.2d 215, 221 (D.C.1984). Our standard of review is the same as that of the trial court in initially considering the motion. *Holland v. Hannan,* 456 A.2d 807, 814 (D.C.1983). Moreover, the party opposing the motion is entitled to the benefit of all favorable inferences that can be drawn from the record. *Murphy v. Army Distaff Foundation, Inc.,* 458 A.2d 61, 62 (D.C.1983). Applying

---

**11.** Patrick's allegation in the Plea of Title and Answer concerning the course of dealing and oral contract between Patrick and Hardisty was as follows:

> That he started the payments which had been begun by his brother Patrick, until there came a time when he entered into an agreement with the plaintiff Hardisty, to make certain

necessary repairs and to keep the house in a habitable condition, until such time as the property could be sold at which time the defendant would have received all of the proceeds of such sale over and above the balance owing on the note signed by Marvin A. Patrick.

this standard of review to the instant case, we conclude that the grant of summary judgment on appellee's complaint for possession was improper.

In considering the motion for summary judgment, the trial court focused exclusively on appellant's plea of title as a defense to the possessory action. Finding that the claim of title could not prevail as a matter of law, the trial court granted the motion.

We find that the trial court's consideration of appellant's claim of title was not error.[12] Nevertheless, this finding does not entitle appellee to summary judgment on his complaint for possession because the record before us raises factual questions about the respective rights of the parties regardless of who holds title. These factual questions are based on evidence in the record as to the course of dealing between Patrick and Hardisty commencing on May 1, 1971, and the allegations of the partially performed oral agreement entered into prior to initiation of this action. The highly ambiguous factual record in this case creates questions for the trier of fact as to whether an oral agreement existed, and the rights of the parties under it.

Hardisty claims that because his agreement with Patrick was an oral contract for the conveyance of an interest in land, it is unenforceable under the Statute of Frauds. D.C.Code § 28–3502 (1981).[13] Appellee recognizes, however, the longstanding adoption in this jurisdiction of the doctrine that part performance of an oral contract can preclude application of the Statute of Frauds. *Amberger & Wohlfarth, Inc. v. District of Columbia*, 300 A.2d 460 (D.C. 1973); *DeGrazia v. Anderson*, 62 A.2d 194 (D.C.1948); *Kresge v. Crowley*, 47 App. D.C. 13 (D.C.Cir.1917). The alleged facts of the agreement between Patrick and Hardisty could well fall within this partial performance exception to the Statute of Frauds. Patrick alleges he made extensive repairs to the premises in reliance on Hardisty's promise to split profits from an eventual sale of the property. Patrick further alleges that Hardisty promised not to take any action to recover possession of the property until the property was sold. While we express no view on the merits of this question, this court has recognized that the making of repairs to property in reliance on a promise of continued possession can trigger the protection of the part performance doctrine. *Amberger & Wohlfarth, Inc. v. District of Columbia, supra,* 300 A.2d at 463–64.[14]

Appellant is entitled to have the issues of whether there was an oral contract, the rights of the parties to possession of the property under the oral contract, and any remedies available under the oral contract considered by the trier of fact.

In sum, we conclude that the decision of the trial court granting the motion for summary judgment should be

*Reversed.*

**12.** Implicit in the trial court's order granting summary judgment was the conclusion that Patrick could claim no rights to the property under his brother's written contract with Hardisty, or assumption of that contract himself. We agree with that conclusion based on the failure of appellant and his brother to perform under the written agreement. Thus, our remand is limited to consideration of the rights of the parties under the alleged oral contract.

**13.** The Statute of Frauds, D.C.Code § 28–3502 (1981), provides:
An action may not be brought ... upon a contract or sale of real estate, of any interest in or concerning it, or upon an agreement that is not to be performed within one year from the making thereof, unless the agreement upon which the action is brought, or a memorandum or note thereof, is in writing, which need not state the consideration and signed by the party to be charged therewith or a person authorized by him.

**14.** Absent a fully developed factual record, we cannot determine whether, as claimed by appellee, the alleged oral agreement is not sufficiently specific to be enforceable or is unenforceable due to frustration of purpose. Whether these arguments entitle appellee to a judgment for possession as a matter of law can be determined only after the issues of fact in dispute have been resolved.