**AMALGAMATED TRANSIT UNION, Appellant,**

v.

**Donnie V. HINTON, et al., Appellees.**

**No. 85–692.**

District of Columbia Court of Appeals.

Argued April 18, 1986.

Decided July 22, 1986.

Isaac N. Groner, Washington, D.C., for appellant.

Alan S. Feld, Bethesda, Md., for appellees.

Before NEBEKER, NEWMAN, and FERREN, Associate Judges.

FERREN, Associate Judge:

Appellant, a landlord, challenges the trial court's grant of summary judgment in the

appellee-tenants' action for breach of an apartment lease.[1] A clause of the lease gave the tenants a right to purchase the apartment for $146,000.00 at the end of the lease, "being that that was their original intent" under a rescinded purchase agreement for the same property. The trial court concluded that this clause granted the tenants an unambiguous, unconditional right to purchase. We disagree, reverse, and remand for trial.

## I.

In December 1981, Albert R. Hinton entered into a conditional agreement to purchase from appellant, the Amalgamated Transit Union ("Amalgamated"), apartment Unit 12 and a parking space at The Lindsay, 4250 Garrison Street, N.W. The agreement was for the benefit of Hinton's son and daughter-in-law, appellees Donnie V. and Theresa Hinton (the "Hintons"). Several provisions of the agreement are pertinent to this appeal: Article V established a condition precedent that at least nine irrevocable and binding sales contracts for apartments in the building had to be executed before any right to purchase, or obligation to sell, could arise. Article VIII provided the purchaser with the right to a refund of the deposit if the closing did not take place within two years of the date of the agreement. Article X limited the seller's liability to the purchaser for breach of the agreement. Albert Hinton gave Amalgamated a down payment of $10,000.

In the summer of 1982, more than a year before the conditional right to purchase expired, Amalgamated and the Hintons executed a lease for Unit 12 for two years, from September 1, 1982 to August 31, 1984. Albert Hinton signed the lease as a guarantor of the tenants' obligations but not as a party to the lease itself. Clause 26 provided:

It is agreed by all parties that tenants have the right to purchase this [apartment] with parking at the full purchase price of $146,000.00 at the end of this lease being that that was their original intent under their executed purchase agreement.

Before entering into the lease, Amalgamated returned Albert Hinton's down payment, and the original purchase agreement was released and voided.

## II.

The Hintons contend clause 26 of the lease gave them an absolute and unconditional right to purchase the apartment and parking space at the conclusion of the lease. Amalgamated argues that the reference to the "original intent under their executed purchase agreement" meant that the tenants' right to purchase the apartment was subject to the intent expressed in the earlier purchase agreement. Specifically, Amalgamated contends that clause 26, in legal effect, extended the Hintons' original conditional right to purchase for an additional eight months, from December 1983 to August 1984, and that nine irrevocable and binding agreements to purchase apartments in the building were therefore still necessary before any right to purchase, or obligation to sell, arose.

After considering cross-motions for summary judgment, the trial court concluded that the lease was not ambiguous and ruled for the Hintons: the "language contained in Clause 26 of the Lease Agreement of July 28, 1982 confers an unconditional right to the plaintiffs to purchase Unit No. 12 ... for the purchase price of $146,000.00."

"The question whether a lease is ambiguous is one of law, not fact." *Kurth v. Dobricky*, 487 A.2d 220, 225 (D.C.1985) (citing *Holland v. Hannan*, 456 A.2d 807, 815 (D.C.1983)). Summary judgment is appropriate where a contract is unambiguous and, thus, not subject to two reasonable interpretations. *Holland*, 456 A.2d at 815; *Glekas v. Boss & Phelps, Inc.*, 437 A.2d 584, 587 (D.C.1981). Summary judgment should be denied if interpretation of an

---

1. The tenants' complaint also included a misrepresentation count, but the court granted their cross-motion for summary judgment solely on the first count, breach of the lease.

integrated agreement "depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence." *Holland,* 456 A.2d at 815; *Glekas,* 437 A.2d at 587.

Our standard for reviewing the grant of summary judgment is the same, independent review of the record that the trial court undertakes when originally considering the motion. *Kurth,* 487 A.2d at 225; *Patrick v. Hardisty,* 483 A.2d 692, 696 (D.C.1984); *Holland,* 456 A.2d at 814. Our review leads us to conclude that the trial court erred. We find clause 26 ambiguous and thus reverse and remand for trial.

Both sides, of course, argue that the lease is unambiguous, each claiming its interpretation as the only one possible. Amalgamated contends the trial court erred in not reading the lease and the purchase agreement together, since lease clause 26 clearly incorporates the parties' intent under the purchase agreement to establish a condition precedent: at least nine apartments had to be sold before any right to purchase could arise.[2]

The Hintons argue, to the contrary, that clause 26 gives an unambiguous right to purchase, and that if Amalgamated had anticipated preserving all rights under the purchase agreement, it could have included that language specifically (incorporating it by reference) or merely extended that agreement.

As a way of presenting its own case, each side argues that it would be completely disadvantaged by the opponent's interpretation and thus could not possibly have

assented to the lease on that basis. The Hintons note that the underlying reason for entering into the lease was to preserve their right to purchase. They claim that the leased apartment remained vacant for thirteen months as they made substantial improvements, indicating their intent to reside there permanently.[3] In contrast, Amalgamated contends that it had been unable to obtain nine executed purchase agreements; in fact, the Hintons' agreement represented the only binding agreement. According to Amalgamated, therefore, "[i]t defies reason and all practical intentions to judge, as [did] the Court below, that the Union must have intended to confer upon one tenant in a fourteen-unit complex the unconditional right to force the Union to operate the entire complex as a condominium at the absolute whim of that solitary tenant."

We find the language of clause 26—"being that that was their original intent under their executed purchase agreement"— ambiguous on its face. As the parties' arguments (supported by affidavits) make clear, the language is subject to more than one reasonable interpretation, *Holland,* 456 A.2d at 815 (quoting *Burbridge v. Howard University,* 305 A.2d 245, 247 (D.C.1973)), and thus we cannot discern the intent of the parties without the aid of extrinsic evidence. Summary judgment is inappropriate. We reverse and remand for trial so that the parties can present evidence to support their interpretations. *Kurth,* 487 A.2d at 223.[4]

*Reversed and Remanded.*

---

**2.** Amalgamated argues, in the alternative, that should the contract be deemed ambiguous, Amalgamated should nonetheless receive summary judgment because the contract should be interpreted against the drafter: Albert R. Hinton. The elder Mr. Hinton was not a party to this litigation, and, in any event, we conclude that clause 26 cannot be interpreted without the aid of extrinsic evidence. *Glekas v. Boss & Phelps, Inc.,* 437 A.2d 584, 587 (D.C.1981).

**3.** The Hintons also contend that John Rowland, President of Amalgamated, advised them that he felt bad about delaying the purchase and thus

offered them the option to rent for two years and then to purchase, with the rental payments to be applied to the purchase price.

**4.** Our dissenting colleague concludes that, because the parties literally had rescinded the purchase agreement before executing the lease, no juror could reasonably conclude that the parties intended to incorporate into the lease the same condition precedent contained in the purchase agreement. We disagree. Rescission of the purchase agreement and execution of the lease were companion transactions; rescission was finalized on July 27, 1982, and the lease was

NEBEKER, Associate Judge, dissenting:

The majority finds the language of clause 26 "ambiguous on its face" and "subject to more than one reasonable interpretation." It then concludes that the intent of the parties cannot be discerned without the aid of extrinsic evidence and, accordingly, that a trial is in order. I respectfully disagree. The purchase agreement was rescinded before the execution of the lease. Therefore, no juror could then reasonably conclude that the parties intended to incorporate into the lease the intent under the purchase agreement to establish a condition precedent to the sale of the apartment.

It is undisputed that on June 22, 1982, Albert Hinton and the Union executed a "Release Agreement" whereby each released the other "from all of the terms and conditions of the [purchase] agreement, for now and forevermore." Accompanying the release was the return to Hinton of his $10,000 down payment.

This express mutual agreement to release one another from the terms and conditions of the purchase agreement was a rescission of that agreement. *Great United Realty Corp. v. Lewis*, 203 Md. 442, 450, 101 A.2d 881, 884 (Ct.App.1954); *see also Merickel v. Erickson Stores Corp.*, 255 Minn. 12, 16, 95 N.W.2d 303, 306 (1959) (any abandonment of a contract by mutual agreement is in the nature of a rescission). To rescind a contract "is not merely to terminate it, but to abrogate and undo it from the beginning." *Friedman v. Kennedy*, 40 A.2d 72, 74 (D.C.1944) (quoting

Black, *Rescission and Cancellation*, Sec. 1 (1916)). A rescission does more than release the parties from further obligation. It "annuls" the contract as if it had never been made. *Id.*

In light of the rescission,[1] the reference in clause 26 to "their original intent under their executed purchase agreement" cannot be reasonably construed as the Union and the majority suggest.

The Union contends that the trial court erred in not reading the lease and the purchase agreement together, since, in their view, clause 26 incorporated the parties' intent under the purchase agreement. The majority holds this construction to be one of at least two reasonable interpretations and concludes that the intent of the parties cannot be ascertained without reference to extrinsic evidence, presumably the purchase agreement itself. What the majority ignores, however, is that the extrinsic evidence that they would have a jury consider was "put [to] an end ... as though it never existed." *Friedman v. Kennedy, supra*, 40 A.2d at 74. Further, there was nothing presented on the motion for summary judgment indicative of any admissible evidence which would have permitted a jury to find that the parties had intended to revive and be bound by some or all of the terms of the purchase agreement. *See Rubenstein v. Dr. Pepper Co.*, 228 F.2d 528, 538 (8th Cir.1955) (once an agreement has been rescinded it can only be revived by mutual assent or decree in equity).

---

signed on or about July 28, 1982. In any event, nothing precluded the parties from executing a lease that incorporated a term from a previous agreement.

1. It is true that the agreement to rescind, like the purchase agreement itself, is extrinsic to the lease. However, summary judgment is generally inappropriate only where interpretation of an agreement depends upon the credibility of ex-

trinsic evidence or on a choice among reasonable inferences to be drawn from such evidence. *Holland v. Hannan*, 546 A.2d 807, 815 (D.C. 1983). Here, the existence of the agreement is undisputed. The sole inference to be drawn from it is best expressed by the parties themselves as a mutual agreement to release "one another from all of the terms and conditions of the [purchase] agreement, for now and forevermore."

A contract is ambiguous "when and only when it is, or the provisions in controversy are, reasonably or fairly susceptible of different interpretations, or of two or more different meanings...." *Burbridge v. Howard University*, 305 A.2d 245, 247 (D.C.1973). Clause 26 is not fairly susceptible to differing interpretations, because a jury could not reasonably conclude that the parties intended to incorporate in it terms and conditions of an agreement expressly abrogated by mutual assent. By seizing upon a phrase that is merely declarative of an earlier intent to buy and sell and which is consistent with the same presently expressed intent, the majority creates an ambiguity where one simply does not exist. I would affirm the trial court's grant of summary judgment on count I of the complaint.