JESSAMY FORT &
OGLETREE, Appellant,

v.

Edward J. LENKIN, General Partner
on behalf of 14th and Eye Streets
Associates, Appellee.

No. 87–1473.

District of Columbia Court of Appeals.

Submitted Nov. 2, 1988.
Decided Dec. 21, 1988.

Ronald C. Jessamy, Joanne Doddy Fort
and Karen R. Sistrunk, Washington, D.C.,
for appellant.

Jack C. Sando, Bethesda, Md., for appellee.

Before NEWMAN, STEADMAN and
SCHWELB, Associate Judges.

STEADMAN, Associate Judge:

Jessamy Fort & Ogletree (hereinafter referred to as "Tenant") entered into a lease agreement with 14th and Eye Street Associates (hereinafter "Landlord") for office space on part of the twelfth floor of Landlord's building at 1400 I Street N.W., Washington, D.C. Landlord brought suit for possession and payment due in the Landlord and Tenant Branch of the Superior Court when Tenant, relying on its interpretation of the pertinent lease provisions, refused to contribute any payment relating to building electricity costs. Tenant appeals from the grant of summary judgment in favor of Landlord.

The controversy centers on the proper interpretation of Paragraph 6(a) of the lease agreement, which states in part[1] that:

> As long as Tenant is not in default under any of the provisions of this Lease, Landlord shall provide the following utilities and services to Tenant without additional cost to Tenant, except as otherwise specifically provided herein: [(1)] reasonably adequate electricity.

The lease suggests that the matter of electricity was the subject of particular negotiation.[2] The language inserted as subpart (1) to Paragraph 6(a), relating to "reasonably adequate electricity," represents a modification of the previously existing boilerplate language (which provided that Tenant would pay all costs of electricity and other utilities). Also inserted into the lease at Paragraph 6(b), typed sideways along the margin of the page on which both 6(a) and 6(b) appear, is a provision listing certain types of electrically-operated equipment, and providing that Tenant seek special approval, possibly conditioned on payment of additional rent, for the use of types of equipment other than those specified.[3]

---

1. In addition to subpart (1) dealing with electricity, Paragraph 6(a) contains four additional subparts dealing with other services.

2. Tenant contends that the negotiations which attended the modifications to the boilerplate language would support its interpretation of the lease provisions relating to electricity costs, and controvert Landlord's reading.

3. This provision states in full:

> Tenant will not install or operate in the Leased Premises any electrically-operated

Contending that Paragraph 6(a) is subject to modification by Paragraphs 3(d)(1) and 3(d)(2), Landlord asserts that Tenant is responsible on a pro rata basis for a share of increased electricity costs. Paragraph 3(d)(1) provides:

> Monthly in advance throughout the term of this Lease ... Tenant shall pay to Landlord ... as Additional Rent, Tenant's Building pro-rata share of any increases in the annual amount of Building Operating Costs in excess of FIVE DOLLARS AND 50/100 ($5.50) per square foot (the "Base Building Operating Costs").

Paragraph 3(d)(2) defines "Building Operating Costs," and in part reads as follows:

> For purposes of this Lease, "Building Operating Costs" is hereby defined as all of the costs and expenses which are incurred or accrued by Landlord in owning and operating the Building and land, including, but not limited to ... utilities to the Leased Premises.... [4]

In granting summary judgment for the Landord, the trial court found that the lease unambiguously entitled Landlord to include the cost of electricity as part of the Building Operating Costs.[5]

To the contrary, Tenant asserts that the "at no additional cost" language of Paragraph 6(a) means what it says. Tenant contends that it has met all the conditions set forth in the Paragraph, and that therefore Landlord, not Tenant, is obligated to pay all charges, including charges attributable to cost increases, for electrical service. Tenant in its brief does not specifically indicate its reading of the language "except as otherwise specifically provided herein," but presumably interprets the phrase as limited in scope to what is set forth internally within Paragraph 6(a).[6]

We apply here, as both parties advocate, the standard of review set forth in *Amalgamated Transit Union v. Hinton*, 511 A.2d 433, 434–35 (D.C.1986), following our holding in *Holland v. Hannan*, 456 A.2d 807 (D.C.1983):

> "The question whether a lease is ambiguous is one of law, not fact." Summary judgment is appropriate where a contract is unambiguous and, thus, not subject to two reasonable interpretations. Summary judgment should be denied if interpretation of an integrated agreement "depends on the credibility of extrinsic evidence or on a choice among reasonable inferences to be drawn from extrinsic evidence."
>
> Our standard of review is the same, independent review of the record that the trial court undertakes when originally considering the motion.

*Id.* (citations omitted). Our review of the lease leads us to disagree with the trial court. Neither of the competing interpretations proposed by the parties appears to us implausible from the face of the lease itself, particularly in light of the modifications to boilerplate. "As the parties' arguments ... make clear, the language is subject to more than one reasonable interpretation, and thus we cannot discern the intent of the parties without the aid of extrinsic evidence. Summary judgment is inap-

---

equipment or other machinery other than electric typewriters, adding machines, radios, clocks, standard-size office copiers, *word processing equipment, minicomputer, personal computer, coffee machine, AV equipment, refrigerator, dishwasher and microwave and* other special equipment approved in writing by Landlord without first obtaining the prior written consent of Landlord who may condition such consent upon the payment by Tenant of additional rent in compensation for such excess consumption of utilities and for the cost of additional wiring as may be occasioned by the operation of said equipment or machinery.

The italicized portion is in fact an insert to the insert, both specially initialed by the parties.

4. Numerous other elements of cost are itemized.

5. The record does not show that the trial court expressly relied on the language in Paragraph 6(a) which reads "except as otherwise specified herein." However, we think it a fair inference to assume that the trial court looked to this language in finding, as it did, that Paragraph 3(d)(1) & (2) modified Paragraph 6(a).

6. 6(a), even under the Tenant's reading, would commit Landlord to payment only of "reasonably adequate electricity," a term to whose definition the insert to 6(b) might be relevant.

propriate." *Amalgamated Transit, supra,* 511 A.2d at 435 (citations omitted).
REVERSED AND REMANDED.