**John T. PATRICK, Appellant,**

v.

**John HARDISTY, Appellee.**

**Nos. 86–979, 86–1061.**

District of Columbia Court of Appeals.

Argued Dec. 8, 1988.
Decided Sept. 13, 1989.

Richard A. Samp, with whom Ralph A. Taylor, Washington, D.C., was on the brief, for appellant.

Philip M. Musolino, Washington, D.C., for appellee.

Before ROGERS, Chief Judge, and BELSON and STEADMAN, Associate Judges.

BELSON, Associate Judge:

These appeals involve a longstanding dispute over the ownership of real property located at 1250 Eighth Street, N.W. At a trial on the merits the trial court, sitting without a jury, entered judgment in favor of appellee, John Hardisty. Following a further evidentiary hearing, the court released to Hardisty all monies deposited in the court registry pursuant to Superior Court Landlord and Tenant Rule 5(c). Appellant, John T. Patrick, appeals from both rulings on the basis that evidence regarding a second agreement between the parties was improperly excluded at trial. We agree, reverse, and remand for further proceedings.

This dispute was previously before another division of this court on appeal from a grant of summary judgment in favor of appellee. *See Patrick v. Hardisty*, 483 A.2d 692 (D.C.1984) (hereinafter *"Hardisty I"*). As we noted then, "[t]he factual and procedural background of this case is complex." *Id.* at 693. We will not repeat that division's explication of the details of the transactions and the procedural steps taken as of the time that opinion issued. Instead, we incorporate by reference the statement of facts in that opinion.[1] Suffice it to say that in *Hardisty I* this court reversed a grant of summary judgment in favor of Hardisty and remanded the case for trial on "the issues of whether there was an oral contract, the rights of the parties to possession of the property under the oral contract, and any remedies available under the oral contract...." *Id.* at 697.

Hardisty maintained in the ensuing trial, and the trial court agreed, that the court's opinion in *Hardisty I* limited the issues to be tried on remand to the question of the existence of a single, alleged oral contract; one between the owner, Har-

---

1. We note that subsequent to our opinion in *Hardisty I,* appellee Walter Hardisty died and his brother John Hardisty, his successor in interest, has been substituted in his stead. In addition, in December 1983 the house on the property was rendered uninhabitable by a fire. While this fire predated the court's opinion in *Hardisty I,* the court was apparently not informed of it.

disty, and the occupant and would-be purchaser, John Patrick, providing for the distribution of any proceeds from a proposed sale of the property to another proposed purchaser, the Redevelopment Land Agency ("R.L.A.").[2] Acting on this understanding of *Hardisty I*, the trial court prohibited the introduction of any evidence regarding a subsequent agreement between the parties providing for the distribution of the proceeds from any sale of the property to a party other than R.L.A. which might come about should R.L.A. fail to purchase the property. Patrick argues that the scope of this court's remand in *Hardisty I* was not so limited. According to Patrick, this court remanded the case to the trial court for a determination of whether *any* oral contract existed and the rights of the parties thereunder. Thus, in Patrick's view, evidence regarding any oral agreement or agreements between the parties, not just an agreement regarding R.L.A.'s purchase of the property, was admissible at trial. Essentially, the question before this court, then, is the scope of this court's remand order in *Hardisty I*.[3]

Hardisty, taking the same approach as the trial court, places heavy reliance on footnote twelve in *Hardisty I* to support its position on the limited nature of the issue remanded to the trial court. *See Hardisty I, supra,* at 697. [6/27/86 Tr. at 9, 14] In footnote twelve the court stated that "our remand is limited to consideration of the rights of the parties under *the* alleged oral contract." *Id.* at 697 n. 12 (emphasis added). Hardisty contends that the use of the word "the," combined with the fact that the only oral contract discussed by the court in *Hardisty I* was the contract involving R.L.A., indicates that the remand was limited to the question of the existence and rights of the parties under this particular contract.

A reading of *Hardisty I* as a whole, in our view, does not bear out Hardisty's interpretation of that opinion. In *Hardisty I* the court repeated Patrick's contractual claim as stated in his pleadings as follows:

That [appellant John Patrick] started [making] the payments which had been begun by his brother [Marvin] Patrick, until there came a time when he entered into an agreement with the plaintiff Hardisty, to make certain necessary repairs and to keep the house in a habitable condition, until such time as the property could be sold at which time the defendant would have received all of the proceeds of such sale over and above the balance owing on the note signed by Marvin A. Patrick.

*Id.* at 696 n. 11. Appellant's pleadings were broad enough to encompass a contract involving a sale to a purchaser other than R.L.A. Indeed, this language expresses what appellant still maintains the parties agreed to after it became apparent that the R.L.A. transaction was dead. The trial court appears to have recognized this, but concluded that footnote eleven, which quoted Patrick's pleadings as set forth above, had to be read in conjunction with footnote twelve. Footnote twelve is not, however, to be read in conjunction with footnote eleven which is in a different paragraph on a different page. Rather, it is appropriate to read footnote twelve in light of the text which refers to it. Read in this light, it becomes apparent that the word "the" in footnote twelve is intended to distinguish the oral contract claim from appellant's other claims involving a Plea of Title and rights under a written contract. The word "the" was thus intended not to restrict the scope of any alleged oral contract, but merely to distinguish it from the written contract.

Moreover, this interpretation is consonant with the rest of the court's opinion. In summarizing its holding the court stated,

[a]ppellant is entitled to have the issues of *whether there was an oral contract,*

---

2. Appellee also asserts that this case is moot because possession was relinquished in December 1983 due to the fire that rendered the property uninhabitable. Under an oral contract, however, appellant claims more than a right to mere possession.

3. In view of our resolution of this issue in appellant's favor, we do not address appellant's further contention that the trial court erred in failing to grant appellant's motion for a continuance.

the rights of the parties to possession of the property under the oral contract, and any remedies available under the oral contract considered by the trier of fact. *Hardisty I, supra,* at 697 (emphasis supplied). The court was thus explicit in its refusal to delve into the precise terms and confines of the alleged oral contract. The court emphasized that the scope of its inquiry was narrow because the appeal before it was from a grant of summary judgment. *See Hardisty I,* 483 A.2d at 696 ("Our standard of review is the same as that of the trial court in initially considering the motion." "Thus, the court's role is not to resolve *any* fact issues, but rather 'merely to see if "the record ... demonstrate[s] that there is no issue of fact from which a jury could find" for the non-moving party.' " (emphasis added) (citations omitted)). The court also repeatedly pointed to the limited nature of the record before it. *See id.* at 697 and n. 24 ("The highly ambiguous factual record in this case creates questions for the trier of fact as to whether an oral agreement existed, and the rights of the parties under it." "Absent a fully developed factual record, we cannot determine whether, as claimed by appellee, the alleged oral agreement is not sufficiently specific to be enforceable or is unenforceable due to frustration of purpose."). The court was unwilling to venture a position as to whether or not such a contract even existed, let alone its precise terms and boundaries.

■ In excluding evidence of any other oral agreements, the trial court also relied to some extent on its interpretation of a portion of deposition testimony given by Patrick.[4] According to the trial court's interpretation of this testimony, appellant explicitly denied the existence of any oral contract regarding the division of proceeds from the sale of the property to anyone other than R.L.A. While this might be one plausible interpretation of this testimony, it is neither the only nor the most likely one. The questions posed to appellant at that point in the deposition were all focused on that particular oral agreement. Read in context, we regard this testimony as indicating only that there was no contingency provision in the first oral contract regarding the proposed sale to R.L.A. in case R.L.A. failed to purchase the property. The issue of whether there was a subsequent agreement concerning R.L.A.'s failure to purchase the property was simply not addressed, nor were the terms of any such agreement. Furthermore, even if Patrick's testimony is interpreted as a denial that any subsequent agreements were reached, there was nothing to prevent Patrick from contradicting his own deposition testimony. Of course, he would have been subject to cross-examination and impeachment with the prior deposition testimony and this might have a bearing on the factfinder's credibility determination. This does not, however, provide a basis for completely excluding the testimony.

■ *Hardisty I* did not purport to decide any factual issues regarding the terms of the alleged contract, nor could it, due to the restricted scope of its review and the circumscribed nature of the record before it. The opinion mentioned the contract involv-

---

4. The relevant testimony appears at pages 25–27 of appellant's deposition testimony.

Q Now when was it that you entered into this alleged oral agreement with Mr. Hardisty for you to stop making payments and do repairs?
A I don't recall the exact time but it was in the 70's when Urban Renewal was coming through there, that area there.
Q And this was an oral agreement, correct?
A Right.
Q Now if I understand what you're telling me the agreement was he—if the Urban Renewal people took the property he was to get paid what you owed him and then you were to divide equally any excess, is that correct?
A That's correct.

Q And what was the agreement in the event that Urban Renewal didn't take the property?
A There was no agreement to that affect.
Q You weren't being forgiven on your mortgage?
A What?
Q You weren't being forgiven on your indebtedness were you?
 *　*　*　*　*　*
Q What was to happen with the balance due and owing on the property of $8,000 if the property wasn't taken by the District Government?
A There wasn't any agreement as I recall.
Q Were you supposed to pay it?
A Yes, I attempted to pay Mr. Hardisty on a couple of occasions.

ing R.L.A. only in summarizing the state of the record at that time. References to facts in an appellate opinion on an appeal from the grant or denial of a motion for summary judgment do not resolve factual issues, nor are they always statements of undisputed or stipulated facts. We recognize that the trial judge was attempting to adapt our appellate opinion to a complicated and not yet fully developed record. Unfortunately, the appellate opinion, as interpreted, became a straitjacket that inhibited the development of a full record. *See Wemhoff v. Investors Mgmt. Corp. of America*, 528 A.2d 1205, 1207 (D.C.1987). Appellant should have been permitted to present testimony regarding any oral contract between the parties whether it involved a sale of the property to R.L.A. or to some other purchaser.[5] Accordingly, the judgment of the trial court is reversed and this matter is remanded to the trial court for further proceedings consistent with this opinion.[6]

*Reversed and remanded.*

**5.** Appellee also contends that even if it was error for the trial court to exclude testimony regarding a subsequent agreement between the parties, the error was harmless because the trial court did not find appellant a credible witness. This ignores the fact that had the trial court permitted appellant to fully develop the later agreements, the overall force of his presentation might have been more cogent and persuasive. In any event, we cannot conclude with "fair assurance" that this would not have been the case. *See Lewis v. Washington Metropolitan Area Transit Authority*, 463 A.2d 666, 673 (D.C. 1983).

**6.** It follows from this result that distribution of the monies in the registry of the court, the subject matter of No. 86–1061, ought not to have been made to Hardisty. Under the circumstances, we deem it inappropriate to grant any relief in this regard. Upon the conclusion of further proceedings, the trial court should address this matter anew.