**Ralph O. BROWNFIELD, Appellant,**

v.

**Truman H. LANDON, Appellee.**

**No. 16825.**

United States Court of Appeals District of Columbia Circuit.

Argued May 11, 1962.

Decided June 28, 1962.

Certiorari Denied Dec. 3, 1962.
See 83 S.Ct. 291.

Mr. Bryon N. Scott, Washington, D. C., for appellant. Mr. Robert D. Scott, Washington, D. C., also entered an appearance for appellant.

Mr. Daniel A. Rezneck, Asst. U. S. Atty., with whom Messrs. David C.

# 390

Acheson, U. S. Atty., and Nathan J. Paulson and Joseph M. Hannon, Asst. U. S. Attys., were on the brief, for appellee.

Before WILBUR K. MILLER, Chief Judge, DANAHER and BASTIAN, Circuit Judges.

BASTIAN, Circuit Judge.

This is an appeal from a judgment of the District Court which granted summary judgment to the defendant [appellee].

The action in this case sought damages for slander against the defendant, who was serving as Inspector General of the Air Force at the time of the alleged defamation. A brief review of the facts established beyond dispute is necessary to a decision of this case.

Sometime in May 1955 the Office of Special Investigations of the Air Force started an investigation of alleged irregular conduct on the part of certain personnel at the Middletown Air Materiel Area, Olmsted Air Force Base, Pennsylvania. The investigation centered largely around the Royal Electric Company of Dayton, Ohio, and its connection with the plaintiff [appellant] Brownfield, among others. At the time the investigation was initiated, plaintiff was a temporary Brigadier General of the Air Force and vice-commander for Middletown; defendant was a Lieutenant General of the Air Force and, as such, was responsible for the Office of Special Investigations as Inspector General.

Without attempting to go into the many ramifications of the investigation, it is sufficient to state that serious charges were levelled at plaintiff, relating especially to his personal participation in certain business and personal transactions involving a firm known as the Royal Electric Company. Plaintiff was reprimanded and his temporary rank of Brigadier General was terminated on October 1, 1955, at which time he reverted to his permanent rank of Colonel.

Robert E. McNett, head of the Royal Electric Company, contacted Representative Wickersham, a member of Congress from Oklahoma, who knew of the fact that Royal, as well as Brownfield, was charged with irregularities. Wickersham and McNett, as a result of a telephone request from Representative Wickersham, conferred with Lieutenant General Eckert, then Assistant Chief of Staff for Materiel with headquarters in the Pentagon. Wickersham explained that he was acting in his official capacity and as a member of the House Armed Services Committee. He added that Royal was on the debarred bidders list in connection with the charge against plaintiff, and particularly in connection with a patent which the latter had sold to Royal. General Eckert made an appointment for General Landon to meet with Wickersham and McNett. Whether or not the meeting was requested by Mr. Wickersham, Mr. McNett or General Eckert is not clear but that is immaterial, as the appointment was agreeable to both Wickersham and McNett.

Mr. Wickersham, Mr. McNett, General Landon, and a junior officer of the Air Force met on October 13, 1955, at which meeting the slanderous words were allegedly spoken. Although there is not the slightest question that the purpose of the conference was to cause a cancellation of the investigation and a restoration of Royal as an eligible bidder, some question is raised as to who first brought up plaintiff's name. We consider the answer to that question immaterial. The purpose of the conference was to discuss the investigation, the surrounding facts of which were fully known to all parties present. Since the investigation involved improprieties alleged to have arisen in connection with certain business transactions between plaintiff and Royal, it is obvious there could have been no discussion of the investigation without reference to plaintiff's activities, the two being inseparably linked. In other words, silence as to plaintiff's activities would have been equivalent to silence with respect to the investigation. And, from the time Mr. Wickersham first entered the picture until the meeting at

which the alleged slander took place, the matter under discussion involved the relationship allegedly existing between Royal and plaintiff. It further appears that, in the course of this conversation, Mr. Wickersham remarked that in his opinion Congress, or one of its committees, could investigate the investigators and that General Landon's investigators were the ones who should be investigated. It was in responding to this observation concerning the integrity of the investigation that General Landon is alleged to have slandered the plaintiff.

Thereafter, and on September 4, 1959, the present suit was filed seeking damages for the alleged slander. The answer of the defendant admitted conferring with Mr. Wickersham and Mr. McNett but denied that he made the statement attributed to him, pleaded the truth of the words that he did speak, and stated "that any and all actions taken or words spoken in the premises by him were in the course and conduct of his official duties as Inspector General of the United States Air Force and are and were absolutely privileged." It is with this claim of privilege that this opinion will deal.

On November 27, 1959, the defendant filed motion for summary judgment, with accompanying affidavits and exhibits. Opposition and accompanying affidavits were filed by plaintiff. This motion was denied by District Judge Youngdahl on June 3, 1960, on the ground that material facts were in dispute, particularly those concerning the circumstances under which the defendant uttered the alleged slander.

After depositions of McNett, Brownfield, Wickersham, General Eckert, and Colonel N. E. Powel (who was present at the interview in question and who "normally * * * was always present whenever General Landon as Inspector General had an official visitor") had thereafter been taken and further exhibits filed, the defendant "on the basis

of further discovery since June 3, 1960," moved the court for summary judgment "for the reason that there now exists no dispute as to the material facts and defendant is entitled to judgment as a matter of law."

In a brief memorandum, the court (Judge Matthews) announced that it found for the defendant. The District Judge relied upon two cases decided by the Supreme Court, Barr v. Matteo, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959), and Howard v. Lyons, 360 U.S. 593, 79 S.Ct. 1331, 3 L.Ed.2d 1454 (1959); and Gregoire v. Biddle, 177 F.2d 579 (2d Cir.1949). Accordingly, on November 21, 1961, the court entered its order granting the motion for summary judgment. This appeal followed.

We think the two Supreme Court cases adequately establish the correctness of the District Court's ruling.

Barr v. Matteo, supra, was a libel action, the libel being contained in a press release issued at the direction of the defendant, the Acting Director of the Office of Rent Stabilization, announcing his intention to suspend two subordinate officials because of the part they had played in formulating a plan for the utilization of certain agency funds. Thus, the press release was alleged by the plaintiffs to have defamed them and to have been actuated by malice. After certain intermediate proceedings not here material, this court held [1] that the press release was protected by a *qualified* privilege but that there was evidence from which a jury could reasonably conclude that the defendant [petitioner in the Supreme Court] had acted maliciously or had acted with lack of reasonable grounds for believing that his statement was true, and that either conclusion would defeat the qualified privilege.

The Supreme Court granted certiorari,[2] to determine whether under the circumstances of the case petitioner's claim of *absolute* privilege should have stood as a bar to the maintenance of the suit

1. 103 U.S.App.D.C. 176, 256 F.2d 890 (1958).

2. 358 U.S. 917, 79 S.Ct. 287, 3 L.Ed.2d 237 (1958).

despite the allegations of malice contained in the complaint. The Supreme Court reversed the judgment of this court holding that petitioner's plea of absolute privilege in defense of the alleged libel should have been sustained. Mr. Justice Harlan, joined by three other members of the Court, rendered an opinion in which he stated:

"It has been thought important that officials of government should be free to exercise their duties unembarrassed by the fear of damage suits in respect to acts done in the course of those duties—suits which would consume time and energies which would otherwise be devoted to governmental service and the threat of which might appreciably inhibit the fearless, vigorous, and effective administration of policies of government." 360 U.S. at 571, 79 S.Ct. at 1339.

Following this statement, Mr. Justice Harlan quoted at length from the opinion of Judge Learned Hand in Gregoire v. Biddle, supra, then continued:

"We do not think that the principle announced in Vilas can properly be restricted to executive officers of cabinet rank, and in fact it never has been so restricted by the lower federal courts. The privilege is not a badge or emolument of exalted office, but an expression of a policy designed to aid in the effective functioning of government. The complexities and magnitude of governmental activity have become so great that there must of necessity be a delegation and redelegation of authority as to many functions, and we cannot say that these functions become less important simply because they are exercised by officers of lower rank in the executive hierarchy.

"To be sure, the occasions upon which the acts of the head of an executive department will be protected by the privilege are doubtless far broader than in the case of an officer with less sweeping functions. But

that is because the higher the post, the broader the range of responsibilities and duties, and the wider the scope of discretion, it entails. It is not the title of his office but the duties with which the particular officer sought to be made to respond in damages is entrusted—the relation of the act complained of to 'matters committed by law to his control or supervision,' Spalding v. Vilas, supra, [161 U.S.] at 498 [16 S.Ct. 631, 40 L.Ed. 780]—which must provide the guide in delineating the scope of the rule which clothes the official acts of the executive officer with immunity from civil defamation suits." 360 U.S. at 572–574, 79 S.Ct. at 1340.

Mr. Justice Black concurred in the reversal of the judgment and rendered a separate opinion, in the course of which he stated:

"It is enough for me here that the press release was neither unathorized nor plainly beyond the scope of Mr. Barr's official business, but instead related more or less to general matters committed by law to his control and supervision. See Spalding v. Vilas, 161 U.S. 483, 493, 498–499 [16 S.Ct. 631, 40 L.Ed. 780]." 360 U.S. at 577–578, 79 S.Ct. at 1343.

There were several dissents in Barr, among the reasons for which were: That the press release was not an appropriate exercise of discretion by Barr; that a public statement such as a press release is normally intended for and reaches a larger audience than an internally communicated report; that a press release is communicated to a public in no position to evaluate its accuracy whereas, when communicated internally, the superior is usually in a position to do so; and that giving officials below cabinet or equivalent rank qualified privilege for statements to the public would in no way hamper the executive department of the government, nor would it unduly subordinate the interest of the individual in obtaining redress for the public defamation. A further ground of dissent

was that the issuance by the petitioner there was not "action in the line of duty."

In Howard v. Lyons,[3] defendant [petitioner in the Supreme Court] was a Captain in the Navy and Commander of the Boston Naval Shipyard. While acting as such, he withdrew recognition of the Federal Employees Veterans Association, in which the alleged libelees were officers, and sent an official report of his action to the Chief of the Bureau of Ships and to the Chief of Industrial Relations of the Department of the Navy, reciting his dissatisfaction with the activities of the association. In accordance with the policy and the usual practice of the Navy, he also sent copies of the report to the Massachusetts congressional delegation. Absolute privilege was asserted and upheld by the Supreme Court.

The present case is certainly one falling *a fortiori* within the the holdings of the cases just discussed. Here there was an interview solely brought about as a result of the activities of Wickersham and McNett; no effort was made by the defendant to spread the alleged slander.[4] Also, the statement was made in the course of "matters committed by law to his control or supervision," and "action in the line of duty" in that it was made during the meeting of General Landon, his aide, Mr. Wickersham, and Mr. McNett relating to a matter coming within the responsibilities officially chargeable to the position held by General Landon. There is no question whatever, from the record, but that efforts were made by Wickersham and McNett not only to get Royal Electric back to the position where it could deal with the government, but also to clear plaintiff of the charges against him. Even assuming

that the statements complained of were made (which we are obliged to do for the purpose of the motion for summary judgment) and that the suggestion that the investigators should be investigated angered General Landon (a not unnatural reaction), the whole interview had reference to a matter under the jurisdiction of General Landon which was being discussed by the four people present at the meeting.

■ ■ The plaintiff urges that Judge Matthews "erred by granting summary judgment for defendant after the Court, Judge Youngdahl, had denied *an identical motion* [emphasis supplied] on the ground that genuine issues as to material facts existed. Judge Youngdahl's decision was the law of the case and bound Judge Matthews." Plaintiff's argument on this point is unsound. The motion on which summary judgment was granted was not "an identical motion." The record before Judge Matthews, as we have indicated above, contained a great deal more than was before Judge Youngdahl and demonstrated, in our opinion, not only that the action of Judge Matthews in entertaining the motion was proper, but that her action in granting it was also correct. This was not a case of counsel "shopping" for another judge. Nor was it a situation where the rule of comity between judges required Judge Matthews, on a different and expanded record, to make the same ruling which Judge Youngdahl had made.

Holding that the statements made were absolutely privileged, we affirm the judgment of the District Court.

Affirmed.

3. Decided the same day as was Barr v. Matteo.

4. It may be noted in passing that although there was, technically speaking, a publication of the slander, the publication to the public was done by plaintiff himself in filing the suit.