**Bonnie RATEREE, et al., Plaintiffs,**

v.

**Damon ROCKETT, et al., Defendants.**

**No. 85 C 4700.**

United States District Court, N.D. Illinois, E.D.

April 24, 1987.

---

Piekarski ("Piekarski") and Otis Gilmore ("Gilmore")—under 42 U.S.C. § 1983 ("Section 1983"), claiming violations of plaintiffs' First[2] and Fourteenth Amendment rights. Amended Complaint ("Complaint") Count I alleges (1) while plaintiffs were employed by City, they were harassed because of their political views and (2) plaintiffs were eventually fired for purely political reasons. Count II claims City withheld vacation-pay checks due Rateree, Vaughn and Gardner in an improper attempt to inhibit the exercise of their due-process rights to bring this action. Plaintiffs seek declaratory relief (as to Count I only), injunctive relief and compensatory and punitive damages.

City now moves under Rule 56 for summary judgment against Brown on his Count I wrongful termination claim. For the reasons stated in this memorandum opinion and order, City's motion is denied.

### Facts [3]

In May 1983 City elected David Johnson ("Johnson") as its first black mayor. Plaintiffs all "supported and campaigned for" Johnson and his ticketmate Ernestine Berry-Beck ("Berry-Beck"), whose run for City Commissioner was also successful (Cplt.-Ans. ¶¶ 10, 11, 13, 14). Gilmore also ran successfully for City Commissioner on Johnson's ticket.[4] During the same election plaintiffs all campaigned against Rockett and Piekarski and supported their opponents for City Commissioner slots. Rockett and Piekarski won (Cplt.-Ans. ¶ 12).

City operates under the commission form of government (Ill.Rev.Stat. ch. 24, ¶ 4-3-1). Its legislative body is a city council ("Council") comprising four commissioners ("Commissioners") and the Mayor, with

Alan M. Freedman, Bruce H. Bornstein, Freedman & Bornstein, Chicago, Ill., for plaintiffs.

William J. Holloway, Thomas S. Malciauskas, Hinshan, Culbertson, Moelman, Hoban & Fuller, Chicago, Ill., Harvey J. Barnett, Chicago, Ill., for defendants.

### MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Bonnie Rateree ("Rateree"), Kenneth Vaughn ("Vaughn"), William Gardner ("Gardner") and Leander Brown ("Brown")[1] sue the City of Harvey, Illinois ("City") and three City officials—Commissioners Damon Rockett ("Rockett"), Frank

---

1. Renee Gholson's claims against defendants were dismissed with prejudice March 18, 1987, pursuant to her own motion under Fed.R.Civ.P. ("Rule") 41(a)(2).

2. This opinion will follow the universal (though technically inaccurate) practice of citing to that underlying Bill of Rights provision, even though its incorporation by the Fourteenth Amendment is what plaintiffs really rely upon.

3. This statement is drawn from all parties' submissions (where any fact is established by a pleading admission, it will be cited "Cplt.-Ans. ¶ —"). All reasonable inferences are presented in a light most favorable to Brown, the nonmoving party. *Reardon v. Wroan*, 811 F.2d 1025 (7th Cir.1987) (per curiam). That same principle also applies to any factual statements elsewhere in this opinion.

4. Brown also campaigned for Gilmore (Brown Dep. 37).

each having one vote. After the May 1983 election Mayor Johnson and his ticketmates Berry-Beck and Gilmore had apparent control of the Council. However, Gilmore has since voted with Rockett and Piekarski on a number of occasions to thwart Mayor Johnson's plans. Those votes by Gilmore have caused some animosity between him and plaintiffs (Brown Dep. 52–54).

Soon after his election Johnson appointed Rateree as his "Special Assistant," Vaughn as Coordinator of Economic Development and Gardner as Coordinator of Housing (Project Manager). In late December 1983 Johnson hired Brown as Employment and Training Coordinator.[5]

All plaintiff's jobs (with the possible exception of Brown's [6]) were positions created by City's 1983–84 budget (Pl.Int.Ans. 4(a)–(d), 5(a)–(d), 6(a)–(d)). Then on July 23, 1984 Council passed City's 1984–85 budget ordinance, cutting out all appropriations for the jobs held by all plaintiffs. Rockett, Piekarski and Gilmore voted for the 1984–85 ordinance, while Johnson and Berry-Beck voted against it.

Rateree, Vaughn and Gardner were removed from City's payroll in July 1984, while Brown worked for City until September 1984 (Brown Dep. 28). In December 1984 Rateree, Vaughn and Gardner were rehired: Rateree as Administrative Manager to the Mayor, Vaughn as Project Manager of Economic Development and Gardner as Project Manager of Housing. Brown was never rehired.

Plaintiffs filed this lawsuit May 15, 1985. At that time they claimed they were being "harassed" by Rockett, Piekarski and Gilmore and were under imminent threat of discharge (Brown of course was already gone), all "because of their political affiliations" (Orig.Cplt. ¶¶ 35–36). Nothing happened to them, however, until City's 1985–86 budget ordinance was passed July 11, 1985 (Rockett, Piekarski and Gilmore

voting in favor, D. Johnson and Berry-Beck against). That ordinance contained further cuts affecting plaintiffs: "Secretary and Other" was deleted as a line item from Johnson's budget, eliminating funding for Rateree's job. Funding for Vaughn's and Gardner's jobs was also withdrawn. As of July 22, 1985 Rateree, Vaughn and Gardner thus joined Brown among the ranks of ex-City employees. Plaintiffs then filed the Complaint, alleging those budget cuts were also politically motivated.

### Defendants' First Summary Judgment Motion

On February 26, 1986 (in the "Opinion," 630 F.Supp. 763 (N.D.Ill.)) this Court considered, and for the most part rejected, a motion for summary judgment asserted by all defendants against all plaintiffs. All defendants' Count I arguments were turned down save one, under which Rockett, Piekarski and Gilmore were dismissed from all plaintiffs' wrongful termination claims on absolute legislative immunity grounds. That left plaintiffs with (1) wrongful termination claims against City alone and (2) political harassment claims against Rockett, Piekarski, Gilmore and City. As to Count II the Opinion denied defendants' motion, except that City Clerk Walter Johnson was dismissed on good faith immunity grounds.

Because Brown is not a party to the political harassment or Count II charges, his only claim is against City for wrongful termination. City has again moved for summary judgment on that claim, despite the Opinion's having turned down an identical motion. Yet neither party has directly addressed the question whether or why City should be allowed two bites at the same apple. City does point to *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), decided after

---

5. Brown's duties were "to the Coordinator of Economic Development [Vaughn] with assorted projects in training and development programs" (Brown Int.Ans. 7(f)).

6. Brown claims funding for his position was not specifically included in the City's budget because the position was created in the middle of

the fiscal year (Brown Dep. 100). Gilmore believes Brown may never have been legitimately employed by City, because his position did not appear in the budget (Pl.Ex. 17). In any event, all agree funding for his position was eliminated by the 1984–85 budget ordinance.

issuance of the Opinion, in support of its present motion. *Celotex* clarified the nonmoving party's burden of production in responding to a Rule 56 motion. City claims Brown has not satisfied that burden—but nothing in the Opinion even suggests this Court imposed a burden on plaintiffs (the nonmovants) in any respect different from that later articulated in *Celotex*.

Defendants' first motion was made before discovery was completed.[7] This Court noted at several points in the Opinion (see, e.g., 630 F.Supp. at 766 n. 6) that relevant evidence as to Brown was missing. Now discovery has been completed, but *that* does not justify defendants' piecemeal approach to what is supposed to be a substitute for trial (or, more precisely, a demonstration that no trial is needed because on all the facts—with all favorable inferences—the nonmovant must lose). This Court has commented elsewhere on the mistaken view that Rule 56's authorization to file for summary judgment "at any time" is an open invitation to do so prematurely, comfortable in the assurance that if movant loses out he or she may simply run away, living again to fight another day (see, e.g., *Teamsters Local 282 Pension Fund v. Angelos*, 649 F.Supp. 1242, 1252–53 (N.D. Ill.1986)).

Under the circumstances this Court might well spurn the current motion on those purely procedural grounds. It might even foreclose plaintiffs' resort to the more detailed evidentiary submissions as to Brown, though that would seem to border on an abuse of discretion (given the paucity of authority in this area). Instead this opinion will decide City's Rule 56 motion on its merits. *Brownfield v. Landon*, 307 F.2d 389, 393 (D.C.Cir.1962).[8] Doing so will save everyone involved (with the possible exception of this Court) time and money, either by establishing the material factual disputes to be decided at trial or by eliminating an unsupported claim.

### *Summary Judgment Principles*

Under Rule 56 this Court must first determine whether any genuine issue exists as to any material fact. If there are none, it is possible to decide (based on the established facts) whether the moving party is entitled to a judgment as a matter of law (Rule 56(c)). Summary judgment is not precluded by the existence of *any* factual dispute. Only those that are "outcome determinative" bar summary judgment. *Shlay v. Montgomery*, 802 F.2d 918, 920 (7th Cir.1986).

As *Celotex*, 106 S.Ct. at 2553 made clear, Rule 56 does not require a moving defendant to negate plaintiff's claim.[9] Indeed, summary judgment is appropriate if the nonmovant plaintiff (*id.*):

> fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as

---

7. Indeed, at that time Brown had neither answered defendants' interrogatories nor been deposed.

8. In *Brownfield* a second "identical" motion by defendant for summary judgment was allowed because the record contained much more relevant evidence. As here, defendant's earlier motion had been made and decided before discovery was completed.

9. This is not to say precisely what level a moving defendant's submission must attain. Justice Rehnquist's opinion for the Court suggested (106 S.Ct. at 2554):

> the burden on the moving party may be discharged by "showing"—that is, pointing out to the District Court—that there is an absence of

evidence to support the nonmoving party's case.

But Justice White, whose concurrence supplied the fifth vote for the majority, said (106 S.Ct. at 2555):

> It is not enough to move for summary judgment without supporting the motion in any way or with a conclusory assertion that the plaintiff has no evidence to prove his case.

>    *     *     *     *     *     *

> It is the defendant's task to negate, if he can, the claimed basis for the suit.

Here defendants have clearly done more than assert Brown's lack of evidence and have satisfied Justice White's suggested higher burden.

a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

As one plaintiff in this case (and the sole target of City's present motion). Brown has the burden of proof on the essential elements of his claim against City. He must come forward with some proof as to every essential element of that claim, failing which City will be entitled to a judgment as a matter of law. Once any evidence sufficient to support a jury verdict is adduced, the court cannot resolve the issues under Rule 56 (*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted)):

> [This Court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.... There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.... If the evidence is merely colorable, or is not significantly probative ... summary judgment may be granted.

### Wrongful Termination

As this Court recently explained (*Cygnar v. City of Chicago*, 652 F.Supp. 287, 291 (N.D.Ill.1986)):

> Section 1983 is not a generalized guaranty of fairness in employment relations. Governmental employers may be mistaken and even arbitrary in dealing with their employees.... But governmental defendants will not be subject to *federal* liability unless their conduct masks constitutionally forbidden mistreatment.

Here Brown has alleged one such type of "constitutionally forbidden mistreatment": He claims he was fired because of his political affiliations. *Mt. Healthy City Board of Education v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977) (foot-

note omitted) established the requirements for proving such a claim:

> Initially, in this case, the burden was properly placed upon [plaintiff] to show that his conduct was constitutionally protected, and that this conduct was a "substantial factor" in the Board's decision to [fire] him. [Plaintiff] having carried that burden ... the employer must show by a preponderance of the evidence that it would have reached the same decision as to [plaintiff's continued employment] even in the absence of the protected conduct.

City does not dispute First Amendment protection for Brown's political affiliation with Mayor Johnson and Jesse Jackson. Instead City argues Brown has simply failed to produce any evidence that the elimination of his job was politically motivated. Unfortunately Brown ignores that argument and jumps to the second step in the *Mt. Healthy* analysis, attacking City's claimed economic justification for eliminating his job. That gap in Brown's submission has improperly shifted the burden to this Court to examine the evidence and determine whether Brown has satisfied his own evidentiary burden.[10]

### Brown's Evidence

City is correct that Brown cannot satisfy his burden by simply showing he supported Johnson while a majority of the Council did not (see *Nekolny v. Painter*, 653 F.2d 1164, 1168 (7th Cir.1981)). But City is wrong in arguing Brown's burden "must be strictly and affirmatively met." Brown need only come forward with evidence from which a reasonable jury could infer that his political affiliation was *a* motivating factor when Council eliminated his job. As Brown points out, ordinarily such questions of motive and intent are particularly inappropriate for summary judgment (*Cedillo v. International Association of Bridge & Structural Iron Workers*, 603 F.2d 7, 11 (7th Cir.1979)).

Brown has in fact tendered some evidence of political motivation. He and the

---

**10.** City's memoranda and submissions are devoted mainly to showing what Brown has not proved or cannot prove. That approach means neither litigant has addressed Brown's affirmative evidence of political motivation, together with the favorable inferences the law requires.

other three plaintiffs were the only City employees whose positions were eliminated from the 1984–85 budget (Def.Int.Ans. 1). Rockett later identified those four individuals as Mayor Johnson's "four mascots" when he announced his intent to oppose Johnson in the next election for mayor of Harvey. Though scanty, that evidence alone (Brown Exs. 8–9 [11]) is enough to create a jury question as to political motivation.

Other evidence offers some further support for Brown's claim. Although he was not rehired, the other plaintiffs were. Their jobs were then again cut from the 1985–86 budget. Johnson claims only staff people loyal to him were cut in that way (Johnson July 19, 1985 Aff. ¶ 3).[12] That evidence tends to support the inference Rockett's, Piekarski's and Gilmore's "budget cutting" on City's behalf was politically motivated in 1984 as well as 1985.[13]

In sum, a factual dispute exists as to whether the elimination of Brown's job was politically motivated. Brown thus surmounts the first hurdle. Nonetheless, City can still prevail if it can establish Brown's job would have been eliminated even absent any political motivations. To that end City has come forward with evidence that (1) budget cuts were necessary in 1984 and (2) it was only logical to eliminate plaintiffs' positions (all of which were created in 1983) first. But Brown counters by pointing to the facts that (1) the Department of Board of Health (controlled by Rockett, Harvey's Commissioner of Public Health and Safety) was created in 1984, (2) Chester LaSure was hired as its administrator and (3) LaSure was kept on while plaintiffs were terminated (Def.Int.Ans. 2, 9).[14]

It cannot be said as a matter of law that City would have eliminated Brown's job despite defendants' political motivations. That question requires a weighing of the evidence, and all such weighing must be left for a jury.

### Conclusion

There is a genuine issue of material fact as to Brown's claim for wrongful termination. That issue must be resolved by a jury. City's motion for summary judgment must therefore be denied.

**11.** Immediately before this opinion was written, this Court and the parties held a pretrial conference to treat with the proposed final pretrial order just tendered by the parties. One of the issues addressed in that conference was the admissibility of the evidence described in the text, submitted on the current motion in the form of (1) a newspaper article from the Nov. 11, 1985 *Star* attributing that quoted statement to Rockett and (2) reporter Michael Ulreich's statement ("I do affirm ...") (a) that he wrote the article and (b) all its "facts ... are true and reported correctly" (the latter an obvious tautology, for "facts" are "true" by definition). That submission does not of course satisfy the Rule 56(e) requirement of admissible evidence—but because the flaw could plainly be cured by a proper affidavit from Ulreich, and because Rockett's alleged statement would then be admissible as nonhearsay under Fed.R.Evid. 801(d)(2)(A), this opinion has considered the item. It should be understood, however, this Court has *not* ruled on the admissibility of the newspaper article as such. Because Ulreich's affidavit (that is, his "testimony") would have to be provided by way of evidence in any event, what would then be in evidence would be his own statement that he heard Rockett make the "four mascots" statement. That would moot the potential admissibility of the identical statement in the article.

**12.** Johnson's statement applies literally only to the 1985–86 budget, but defendants have already admitted only plaintiffs' jobs were cut from the 1984–85 budget.

**13.** Because the individual defendants were acting as City Commissioners and together constituted a Council majority, their actions establish City policy and their motives became City's motives. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 1298–99, 89 L.Ed.2d 452 (1986). City cannot avoid an inquiry into those motives simply because the individual defendants have absolute immunity from personal liability for their legislative acts.

**14.** Brown has disregarded Rule 56(e) in many "evidentiary" submissions besides that identified in n. 11. Even though *Celotex* says such submissions need not be admissible at trial, they must still be in a form allowed by Rule 56 (106 S.Ct. at 2553–54). Except for the item discussed in n. 11, as to which Brown has been given more than his due, his unauthenticated submissions have not been considered here.